292 So.2d 786 (1974)
Leo F. ALLEN
v.
The PINEWOOD COUNTRY CLUB, INC., et al.
No. 9726.
Court of Appeal of Louisiana, First Circuit.
March 18, 1974.
*787 Samuel Richard Exnicios, New Orleans, for appellant.
Marcel Livaudais, Jr., New Orleans, for appellees.
Before LANDRY, ELLIS and PICKETT, JJ.
LANDRY, Judge.
Plaintiff appeals rejection of his claims for damages for personal injuries and related medical expense sustained and incurred when plaintiff was struck in the face by a golf ball driven by a member of the foursome in which plaintiff was playing. The trial court rejected plaintiff's claims on the ground that plaintiff negligently proceeded down the fairway in advance of his playing partner in contravention of golfing rules, regulations and customs. We reverse and award plaintiff damages.
The accident occurred on links operated by defendant, The Pinewood Country Club, Inc. (Club), on the morning of August 30, 1970. At the time plaintiff was playing in a foursome consisting of plaintiff, defendant Sam Zerkowsky, Numa Rogers and Bobby Orr. Plaintiff initially sued the Club, Zerkowsky and Zerkowsky's *788 insurer, Fireman's Fund American Insurance Company. The Club was voluntarily dismissed from the action.
Plaintiff and Zerkowsky were experienced golfers. They had played together on a more or less weekly basis for over a year preceding the date of the accident. It appears Rogers and Orr, although not quite as experienced as plaintiff and Zerkowsky, were not novices at the game. On the day in question, play proceeded uneventfully for the first five holes. After driving off the sixth tee (in an order which none could recall), the players were positioned as follows: Zerkowsky's ball rested in or near the edge of a tree line to the right of the sixth fairway about 50 to 75 yards from the tee and approximately one foot behind a small pine tree; Orr's ball lay in the fifth fairway to the right approximately 185 yards from the tee; Rogers' ball was situated in the left center of the sixth fairway about 225 yards out, and plaintiff's ball rested in the center of the sixth fairway approximately 250 yards out. After all drives were completed, the parties proceeded toward their respective balls. Orr went into the fifth fairway on the right; Zerkowsky went to his right toward the rough and tree line; plaintiff and Rogers walked down the left side of the sixth fairway towards their balls, pulling golf carts behind them. As plaintiff approached his ball with his back to Zerkowsky, plaintiff heard someone shout "fore". Plaintiff turned to his right to look and was instantly struck in the face by a ball driven by Zerkowsky.
It is conceded that two well recognized rules of golf are pertinent. First, in a party of golfers, the player furthest from the green or hole shoots first, it being the duty of remaining party members to stay behind the player entitled to shoot first. Second, before a player drives his ball, he must warn players ahead who may be in or near his line of flight, by shouting "fore", and permitting the player or players ahead sufficient time to step aside far enough to avoid danger before actually striking his ball. Whether or not the latter rule applies to the members of one's own party is a matter in serious dispute. It is also a res nova question in the state.
Plaintiff testified that after all drives were completed, Zerkowsky and Orr went off to the right while plaintiff and Rogers proceeded down the left side of the sixth fairway. He stated that Zerkowsky went out of sight into the trees. When plaintiff and Rogers reached a point about 100 yards from the sixth tee, plaintiff turned around and did not see either Zerkowsky or Orr. At about this time, plaintiff spoke to an acquaintance who was proceeding in the opposite direction down the fifth fairway on the right. Plaintiff and Rogers then continued down the sixth fairway toward their respective balls. Plaintiff was aware that Zerkowsky was looking for his ball, and that Zerkowsky would shoot out when the ball was found. As plaintiff neared his ball, he heard the word "fore". Thinking the warning came from the fifth tee to his right, where play proceeded in the opposite direction, plaintiff turned in that direction, and was immediately struck in the face by the ball Zerkowsky had driven.
Zerkowsky testified that after topping his ball off the tee, he located the ball behind a tree on the edge of the right rough. He selected an iron for his next drive, intending to slice the ball around the tree into the center of the sixth fairway. He looked out and saw Allen and Rogers about 50 to 75 yards ahead on the left side of the fairway. He noted that Allen was looking ahead toward the green, and that Allen had his back turned. Zerkowsky yelled "fore" and, assuming Allen would look back, immediately addressed his ball and drove without waiting to determine Allen's reaction to his warning. After driving, he immediately looked up and noted his ball was going in Allen's direction instead of some 30 or 40 feet to Allen's left where Zerkowsky intended his shot to land. He instantly called "fore" again whereupon Allen turned to his right to look and was hit by the ball.
*789 In effect, Mr. Rogers verified Allen's testimony. Rogers stated he was standing about 10 yards from Allen when Allen was struck. In essence, he stated he heard only one warning, namely, the warning given by Zerkowsky after Zerkowsky drove his ball.
Our own jurisprudence follows the well recognized general rule that a golfer must give warning to those who may be near the line of flight of the ball by shouting "fore", and then affording sufficient time for them to step aside far enough to avoid danger. Petrich v. New Orleans City Park Improvement Ass'n, La.App., 188 So. 199; Murphy v. Podgurski, La.App., 236 So.2d 508.
Defendants maintain the present matter properly falls within the rule established in Murphy, above to the effect that a golfer is not required to give warning to players on contiguous holes or fairways to whom danger is not reasonably foreseeable or to another player whom he knows already has him in view and is aware of his intention to drive.
We are in agreement with the above stated rule announced in Murphy, above. It is predicated on the fact that golfers know many shots go astray, either to the right or left of the intended line of flight, and that players on contiguous fairways or those not in the direct line of play may be endangered thereby, which is a risk all golfers must accept.
We disagree, however, that the above rule is applicable in this instance. Present plaintiff was not in another fairway out of defendant's sight. Plaintiff was in plain view of Zerkowsky, and clearly within Zerkowsky's driving range. In addition, plaintiff was sufficiently near Zerkowsky's line of flight to be endangered by an errant ball. Equally important, Zerkowsky knew that plaintiff's back was turned.
The pivotal issue here is whether plaintiff was guilty of negligence barring his recovery by proceeding ahead of a member of plaintiff's own party whom plaintiff knew, or had reason to know, would drive next.
In other jurisdictions where this precise issue has been presented, it has been held that a golfer owes to a companion player the duty of warning the other of his intent to drive when he knows, or should know, the companion is in the intended line of flight. Thus in Alexander v. Wrenn, 158 Va. 486, 164 S.E. 715 (1932), such a duty was decreed owed to a companion player searching for his ball ahead in the rough within a 33 degree angle of defendant's intended line of flight.
Wood v. Postelthwaite, 6 Wash. App. 885, 496 P.2d 988 (1972), is factually analogous. Therein, plaintiff was struck by a drive of a member of plaintiff's own foursome. Plaintiff had driven his ball to the right about 180 yards from the ninth tee. Defendant drove about 110 yards down the fairway toward the left. Each player proceeded toward his ball. Upon reaching his ball, defendant drove without warning. The ball struck plaintiff who was ahead about 45 degrees to the right of defendant's intended line of flight. A jury trial resulted in a verdict in defendant's favor. The Washington Court of Appeal remanded for a new trial holding that a golfer owes a duty to a member of his own party to warn of his intent to drive where the driver knows his campanion is in or near the intended line of flight and is unaware that the driver is about to strike his ball. The rationale of the decision in Wood, above, and cases cited therein, is that, while a golfer assumes certain risks, he does not assume the risk of an inadequate warning where warning is clearly indicated.
We find the principle enunciated in Wood, above, is sound. We also find it is clearly applicable to the facts of this case.
In this instance, plaintiff was seen by defendant before defendant struck his ball. Defendant was also aware that plaintiff was in defendant's driving range; that *790 plaintiff was near defendant's line of flight, and that plaintiff's back was turned. Under the circumstances, it behooved defendant to exercise extreme caution. Here, defendant's negligence consists in failing to ascertain that his warning was heeded, and allowing plaintiff time to step aside before striking his ball. The mere shouting of a warning is insufficient to discharge the duty to warn if the player does not permit the player ahead sufficient time to step aside to avoid the danger. Under the circumstances of this case, a warning followed by an immediate play, without ascertaining that the warning has been heeded, is the equivalent of no warning at all. Defendant should have made sure plaintiff heard his warning, and allowed plaintiff time to move to one side. We find defendant's negligence in this respect a proximate cause of the accident.
It is clear that while plaintiff knew that defendant was to plaintiff's rear, and that defendant would drive his ball first, the last time plaintiff looked rearward, defendant was out of sight in the tree line. Plaintiff was not aware that defendant was in the act of striking his ball when defendant did. We find that plaintiff had the right to assume a member of his own party would not drive while plaintiff was standing in full view near the intended line of flight with plaintiff's back turned toward the impending play. This was a risk plaintiff did not assume. If such conduct amounted to negligence, it was negligence constituting a remote rather than a proximate cause of the accident and does not bar plaintiff's recovery. Plaintiff could reasonably anticipate that under the circumstances, he would receive a warning and be allowed sufficient time to step out of defendant's line of flight.
Plaintiff was struck in the nose. Immediately following the incident, he was taken to a hospital and X-rayed. The pictures showed no fracture. Plaintiff was sent home and given medication for pain. For three or four days, plaintiff had black eyes and a swollen nose. After about a week, plaintiff improved somewhat, but later began to experience pain and difficulty in breathing. In March, 1971, plaintiff consulted Dr. Armand A. Jacques, who X-rayed plaintiff's nose and found a fracture. Dr. Jacques' report appears of record in lieu of his testimony. His examination disclosed a fracture of the nasal pyramid, deviation of the nasal septum and a healed laceration of the dorsum on the right side. On March 23, 1971, Dr. Jacques performed a submucous resection of the nasal septum and an open reduction of a nasal fracture. In the process, he remolded plaintiff's nose. The report indicates plaintiff had suffered a broken nose resulting in virtual blockage on the right side. The operation left a slight scar. Plaintiff was discharged from the hospital the day after surgery. Dr. Armand Jacques considered the results satisfactory.
Plaintiff testified that following the accident, he suffered intense pain and headaches for several days. He improved somewhat after six or seven days. Later, however, he again experienced difficulty and eventually consulted Dr. Jacques in March, 1971. Plaintiff stated that one or two months before trial (June, 1973), he again experienced difficulty, but that he had not sought further medical aid. We find that an award of $3,500.00 will amply compensate plaintiff for his injuries.
Plaintiff also makes a claim for loss of earnings and future medical expense. It suffices to state that these items of damages must be denied for lack of proof.
Plaintiff's claim for special damages in the form of incurred medical expense must also be denied. The record shows that, at a pre-trial conference held herein, it was stipulated that all medical bills incurred by plaintiff were paid by Zerkowsky's insurer, Fireman's Fund, under the medical clause in Zerkowsky's liability policy.
It is ordered, adjudged and decreed that the judgment rendered below rejecting plaintiff's claims against defendants be reversed *791 and set aside, and judgment rendered herein in favor of plaintiff, Leo F. Allen, and against defendants, Sam Zerkowsky and Fireman's Fund American Insurance Company, in solido, in the sum of $3,500.00, with legal interest thereon from date of judicial demand, until paid, and all costs of these proceedings.
Reversed and rendered.