46 Cal.Rptr.3d 271 (2006)
Johnny SHIN, Plaintiff and Respondent,
v.
Jack AHN, Defendant and Appellant.
No. B184638.
Court of Appeal of California, Second District, Division Two.
July 21, 2006.
*274 Barry Bartholomew & Associates and Kathryn Albarian, Glendale, for Defendant and Appellant.
Knickerbocker Law Corporation, Richard L. Knickerbocker, Santa Monica, Gregory G. Yacoubian; Michael H. Silvers, a Law Corporation, and Michael H. Silvers, Los Angeles, for Plaintiff and Respondent.
DOI TODD, J.
Defendant and appellant Jack Ahn appeals from an order granting a new trial *275 which had the effect of reversing the trial court's prior grant of summary judgment in his favor. Plaintiff and respondent Johnny Shin had sued appellant for negligence as a result of injuries he sustained when appellant's tee shot hit him in the head during a round of golf. The trial court initially granted appellant summary judgment on the ground that the doctrine of primary assumption of risk barred Shin's claim. After reviewing additional authorities, the trial court granted Shin's motion for a new trial, finding that there were triable issues of fact as to whether appellant's conduct in failing to confirm Shin's location when he teed off increased the inherent risks of the sport and, in turn, whether Shin's conduct was comparatively negligent.
Appellant challenges the order granting a new trial on both procedural and substantive grounds. Procedurally, he asserts that the new trial order is defective because it fails to identify either the grounds or the reasons for granting a new trial. On the merits, appellant contends that the order cannot stand because the law provides that every golfer assumes the inherent risk of being hit by a golf ball. He also asserts that the new trial could not have been based on his failure to plead assumption of risk as an affirmative defense.
We affirm the new trial order. Though the order does not comply with all applicable statutory requirements, we may affirm it if correct on any one of several grounds raised by the motion. The trial court correctly determined that it was an error in law to grant summary judgment, as the law provides that one owes a duty not to increase the inherent risks of the sport of golf, and the undisputed evidence established that appellant's failure to ascertain Shin's whereabouts before he teed off constituted a breach of that duty. Moreover, triable issues of fact remained as to whether Shin knowingly encountered the risk of injury caused by appellant's breach of that duty. Under these circumstances, the primary assumption of risk doctrine did not bar Shin's action.

FACTUAL AND PROCEDURAL BACKGROUND
On August 10, 2003, appellant, Shin, Jeffrey Frost and a fourth unidentified man were grouped together to play a round of golf at Rancho Park Golf Course. The fourth man left the group after playing the tenth or eleventh hole.
After appellant finished the twelfth hole, he picked up his bag, walked up an embankment to the thirteenth hole and got ready to tee off. He used the lower tee box on the hole. At that time, Shin and Frost were still on the twelfth hole green practicing their putting.
Shin then headed to the thirteenth hole while Frost was still on the twelfth hole green. He walked up an embankment about seven yards behind appellant. He saw appellant walk toward the tee box. He stopped on the cart path before the tee box and then got a water bottle out of his bag and checked his phone for messages. In the vicinity of the thirteenth hole, before anyone had begun to tee off, Shin made eye contact with appellant as he stood to the front and left of appellant.
Appellant's practice on the tee was to back away from the ball and take one practice swing. When he took his practice swing on the thirteenth hole, he did not know where Shin was. He did not see anyone on the fairway at that time. After his practice swing, he stepped forward and focused on the ball for approximately 15 to 20 seconds until he struck it. Appellant did not know where Shin was when he teed off. After he hit the ball, he looked *276 up to see Shin on the ground approximately 25 to 35 feet away; he was to the left of appellant at about a 40 to 45-degree angle from him toward the upper tee box. Appellant's ball had hit Shin in the head.
In May 2004, Shin filed a first amended complaint alleging a single cause of action for negligence. Appellant answered and alleged four affirmative defenses, including assumption of risk which provided in part that "plaintiff was aware of any inherent dangers to plaintiff's person or property while engaged in the recreational activity of skiing and assumed the risk of such danger."
Appellant moved for summary judgment in January 2005. He asserted that the doctrine of primary assumption of risk barred Shin's complaint. In support of the motion, he submitted his own declaration and the declaration of golf pro Joe Buttitta, and attached excerpts of Frost's, Shin's and his own deposition. Buttitta opined that "[w]hen teaching someone how to play golf, I instruct him to watch the ball, meaning that once the shot is lined up he should not take his eyes off the golf ball until he hits it. This is how all golfers are taught to play[;] otherwise it would be very difficult to make contact with the ball."
Shin opposed the motion, asserting that there was a triable issue of fact as to whether appellant's conduct increased the inherent risk of the game of golf. He submitted his own declaration which  consistent with his deposition testimony  indicated that he made eye contact with appellant while he was heading toward the thirteenth hole tee box, at some point before appellant took his practice swing. He also submitted the declaration of golf expert Edward Smilow, which stated that the first safety rule in the Rules of Golf published by the United States Golf Association provides: "`Prior to playing a stroke or making a practice swing, the player should ensure that no one is standing close or in a position to be hit by the club, the ball or any stones, pebbles, twigs or the like which may be moved by the stroke or swing.'" Smilow further opined that appellant had not complied with this rule because he had failed to ascertain the whereabouts of Shin before teeing off on the thirteenth hole. Shin also lodged his own deposition transcripts as well as appellant's and Frost's.
Following an April 14, 2005 hearing, the trial court granted the motion.[1] It reasoned that the doctrine of primary assumption of risk barred Shin's action, since by going out on the golf course Shin assumed the risk of being hit by a ball. Judgment was entered on May 3, 2005.
Shin moved for a new trial on May 12, 2005. The motion asserted that appellant had failed to plead assumption of risk as an affirmative defense, that according to California law not previously cited the uncontroverted evidence failed to show that appellant's conduct did not increase the inherent risk of the sport and that out-of-state authority was contrary to the trial court's ruling. Appellant opposed the motion.
At a hearing in June 2005, the trial court initially rejected Shin's arguments that the answer was defective and that there was any new California law warranting a different result. The trial court further indicated, however, that it had conducted significant out-of-state research and found several cases on point. On the basis of that authority, the court reasoned that "the real issue here I think is whether *277 [appellant] knew of Shin's location in a zone of danger or whether he should have warned of the shot that is coming up  that was coming up which was a drive; and given analysis of those facts, whether that increased the inherent risk of Shin being hit by the golf ball." It also reasoned that the facts seemed to raise several possible contributory negligence issues. The court opined that it would be mistaken to stay with its original ruling and it granted Shin's motion for a new trial.
This appeal followed.

DISCUSSION
Appellant contends that the order granting a new trial is procedurally defective and contrary to the law. We note at the outset that an order granting a new trial following an order granting summary judgment is appealable, even though the order granting a new trial effectively operates like a nonappealable order denying summary judgment. (Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 858-859, 107 Cal.Rptr.2d 841, 24 P.3d 493; Waschek v. Department of Motor Vehicles (1997) 59 Cal.App.4th 640, 643-644, fn. 4, 69 Cal.Rptr.2d 296.) But while an order granting a new trial is typically reviewed for an abuse of discretion, we review an order granting a new trial following a grant of summary judgment independently. (Aguilar v. Atlantic Richfield Co., supra, at p. 859, 107 Cal. Rptr.2d 841, 24 P.3d 493.) This is because any determination underlying the order must be scrutinized according to the test applicable to that determination. (Id. at p. 860, 107 Cal.Rptr.2d 841, 24 P.3d 493 ["the superior court's order granting a new trial was predicated, specifically, on its determination that, in granting the petroleum companies summary judgment, it made an error in law .... [¶] ... [and] such a determination is itself scrutinized de novo"].)
On the basis of our independent review, we conclude that although the order granting a new trial fails to satisfy the applicable procedural requirements, it must be affirmed because it is consistent with the law concerning the assumption of risk doctrine.

I. The Order Granting a New Trial is Procedurally Defective But Not Void.
A trial court may grant a new trial only by following the applicable statutory procedures. (Sanchez-Corea v. Bank of America (1985) 38 Cal.3d 892, 899, 215 Cal.Rptr. 679, 701 P.2d 826.) Code of Civil Procedure section 657 governs the manner of making and entering an order granting a new trial and provides in relevant part: "When a new trial is granted, on all or part of the issues, the court shall specify the ground or grounds upon which it is granted and the court's reason or reasons for granting the new trial upon each ground stated." (See also Treber v. Superior Court (1968) 68 Cal.2d 128, 136, 65 Cal.Rptr. 330, 436 P.2d 330 ["section 657 places on the trial courts a clear and unmistakable duty to furnish a timely specification of both their grounds and their reasons for granting a new trial"].)
Here, the trial court's minute order granting a new trial provided: "Plaintiff's motion for new trial is granted. The judgment in favor of defendant and order granting summary judgment are set aside. The Court finds that there are triable issues of material fact." This order was defective because it failed either to state the grounds or to specify the reasons on which the new trial motion was granted. (Code Civ. Proc., § 657; Sanchez-Corea v. Bank of America, supra, 38 Cal.3d at p. 900, 215 Cal.Rptr. 679, 701 P.2d 826.) *278 That the trial court orally conveyed the basis for its ruling at the new trial motion hearing does not save the order. The written order granting a new trial, either a minute order or an order signed by the judge and filed with the clerk, must state the ground on which the new trial is based (Code Civ. Proc., §§ 657, 660); a specification of reasons must also be in writing (Code Civ. Proc., § 657). (Stevens v. Parke, Davis Co. (1973) 9 Cal.3d 51, 63, 107 Cal.Rptr. 45, 507 P.2d 653 ["section 657 contemplates a written specification of reasons that may be set forth in only two places  either in the order itself or in a separate document filed with the clerk"; "oral statements made by the trial judge at the hearing of the motions clearly do not satisfy this requirement"]; Thompson v. Friendly Hills Regional Medical Center (1999) 71 Cal.App.4th 544, 549, 84 Cal. Rptr.2d 51 ["oral explanation will not suffice" as a specification of reasons]; compare Twedt v. Franklin (2003) 109 Cal. App.4th 413, 419, 134 Cal.Rptr.2d 740 [statutory requirements satisfied where "(1) the written transcript specifying the reasons for the new trial was attached physically to the order, (2) the order referenced and incorporated the attached transcript, (3) the trial judge signed the order, and (4) the order and attachment were filed with the clerk of court"].)
The failure to state the grounds on which a new trial order is based renders the order defective but not void under Code of Civil Procedure section 657. (Sanchez-Corea v. Bank of America, supra, 38 Cal.3d at p. 900, 215 Cal.Rptr. 679, 701 P.2d 826; see also Thompson v. Friendly Hills Regional Medical Center, supra, 71 Cal.App.4th at p. 550, 84 Cal. Rptr.2d 51 ["The failure to supply an adequate specification of reasons renders the new trial order defective, but not void"].) Where a new trial order is defective, "[t]he reviewing court remains under an express statutory duty to affirm such an order if the record will support any ground listed in the motion." (Treber v. Superior Court, supra, 68 Cal.2d at p. 134, 65 Cal.Rptr. 330, 436 P.2d 330; accord Code Civ. Proc., § 657 [an order granting a new trial "shall be affirmed if it should have been granted upon any ground stated in the motion, whether or not specified in the order or specification of reasons"];[2]In re Marriage of Beilock (1978) 81 Cal.App.3d 713, 727, 146 Cal.Rptr. 675 ["if the text of the order made does not fulfill the statutory requirements, then the reviewing court, according to other provisions of [section 657], must affirm the order if it should have been granted on some other ground stated in the motion"].)
In his motion for new trial, Shin asserted that the motion was premised on several grounds, including that there was an irregularity in the proceedings, that the decision was against the law, and that there was an error occurring at the underlying hearing. (See Code Civ. Proc., § 657(1), (6)(7).) Our task, therefore, is to determine whether the record supports the order granting a new trial on any of these grounds. The court in Thompson v. Friendly Hills Regional Medical Center, supra, 71 Cal.App.4th 544, 84 Cal.Rptr.2d 51, outlined the scope of our task: "We independently review all the grounds advanced for the new trial motion and will sustain the order `if it should have been granted upon any ground stated in the motion, whether or not specified in the *279 order or specification of reasons....' (Code Civ. Proc., § 657.) That review includes searching the record, with the assistance of the party for whom the new trial was granted, `to find support for any other ground stated in the motion....' (Mercer v. Perez [1968], supra, 68 Cal.2d [104] at p. 119 [65 Cal.Rptr. 315, 436 P.2d 315].) While we give `considerable weight to the expressed opinion of the trial court' (Malkasian v. Irwin (1964) 61 Cal.2d 738, 749 [40 Cal.Rptr. 78, 394 P.2d 822]), we nonetheless exercise our own judgment, following our review of the record, to determine whether a new trial is legally required." (Thompson v. Friendly Hills Regional Medical Center, supra, at p. 550, 84 Cal. Rptr.2d 51, fn. omitted.)
With this in mind, we turn to the substantive issues raised by the motion for new trial.

II. The Trial Court Properly Granted the Motion for a New Trial, as the Order Granting Summary Judgment Constituted an Error in Law.
In independently reviewing the propriety of the trial court's grant of a new trial following a grant of summary judgment, we apply the same standards that govern the review of a summary judgment motion. (Aguilar v. Atlantic Richfield Co., supra, 25 Cal.4th at p. 860, 107 Cal. Rptr.2d 841, 24 P.3d 493.) That is, we determine whether summary judgment was warranted because there was no triable issue of material fact. (Code Civ. Proc., § 437c, subd. (c); Merrill v. Navegar, Inc. (2001) 26 Cal.4th 465, 476, 110 Cal.Rptr.2d 370, 28 P.3d 116.) In evaluating whether the trial court here properly determined that appellant did not meet its burden to show that Shin's cause of action lacked merit, we consider the limitations on the trial court's role as explained in Binder v. Aetna Life Ins. Co. (1999) 75 Cal.App.4th 832, 840, 89 Cal.Rptr.2d 540: "The trial court may not weigh the evidence in the manner of a fact finder to determine whose version is more likely true. [Citation.] Nor may the trial court grant summary judgment based on the court's evaluation of credibility. [Citation.] ... [¶] The court must consider not only the bare evidence, but also the reasonable inferences deducible from the evidence [citation], and determine whether the evidence is sufficient to support a potential judgment in favor of the opposing party. [Citations.]"
When viewed according to these principles, the record demonstrates that it would have been legally erroneous for the trial court to have maintained its order granting summary judgment. (See Weseloh Family Ltd. Partnership v. K.L. Wessel Construction Co., Inc. (2004) 125 Cal. App.4th 152, 161, 22 Cal.Rptr.3d 660 [motion for new trial made to challenge trial court's grant of summary judgment on the basis of error in law in determination of duty]; see also Weil Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2004) ¶ 10:375, p. 10-122.9 (rev.# 1, 2005).)

A. The New Trial Order Was Not and Could Not Have Been Premised on a Typographical Error in the Answer.
In his motion for a new trial, Shin briefly argued that a new trial was warranted on the basis of appellant's failure to adequately plead assumption of the risk, pointing out that the answer used the word "skiing" where the word "golf" would have been appropriate. At the beginning of the hearing on the motion for a new trial, the trial court summarily rejected this argument, stating: "There is a question as to whether or not there was a typo that caused a defect in the pleadings which was *280 fatal. I don't think that is true. I think that  not you but the previous lawyer wrote `skiing' instead of `golfing.' It is not a fatal flaw in the failure to properly plead the affirmative defense."
The reason for the extensive briefing on this issue is not apparent to us. Any defect in the pleadings resulting from the typographical error in classifying the risk as one assumed of skiing rather than golf was harmless. The court in Harper v. Kaiser Cement Corp. (1983) 144 Cal. App.3d 616, 621, 192 Cal.Rptr. 720, discussed the harmless error rule under similar circumstances and concluded that as long as the merits of the issue were argued by both parties and the plaintiff was sufficiently informed of the defense, "the rule of liberality in the construction of pleadings requires that the answer be liberally construed ... and ... any defect in pleading [a particular] defense be treated as harmless." (Accord Code Civ. Proc., § 469 ["No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits"].)
Here, Shin has not argued and could not argue that he was not fully apprised that appellant was asserting assumption of risk as an affirmative defense to his complaint seeking damages for injuries resulting from a golfing incident. The parties extensively briefed the issue in connection with the motions for summary judgment and a new trial. Accordingly, any pleading defect must be deemed harmless and not the basis for the grant of a new trial.

B. The Undisputed Evidence Did Not Support Application of the Doctrine of Primary Assumption of Risk.

1. Assumption of risk doctrine.
Individuals generally have a duty to use care to avoid injuries to others and may be held liable for negligent conduct that causes injury. (Civ.Code, § 1714.) "In the context of active sports, however, the scope of this duty is limited by the assumption of risk doctrine. [Citation.]" (Huff v. Wilkins (2006) 138 Cal.App.4th 732, 738, 41 Cal.Rptr.3d 754.) This doctrine bars recovery by a plaintiff where, because of the nature of the activity involved and the parties' relationship to the activity, the defendant is held to owe the plaintiff no duty of care. (Hamilton v. Martinelli Associates (2003) 110 Cal. App.4th 1012, 1021, 2 Cal.Rptr.3d 168.)
The assumption of risk doctrine consists of two components: primary assumption of risk and secondary assumption of risk. (Knight v. Jewett (1992) 3 Cal.4th 296, 308, 11 Cal.Rptr.2d 2, 834 P.2d 696 (Knight).) Primary assumption of risk generally applies to inherently dangerous activities and embodies the legal conclusion that the defendant has no duty to protect the plaintiff from a particular risk. In other words, the plaintiff assumes the risk of his or her own conduct. Primary assumption of risk acts as a complete bar to recovery, since the doctrine holds that the defendant owed no duty in the first instance. (Ibid.; accord Kahn v. East Side Union High School Dist. (2003) 31 Cal.4th 990, 1003-1004, 4 Cal.Rptr.3d 103, 75 P.3d 30 (Kahn); Cheong v. Antablin (1997) 16 Cal.4th 1063, 1067-1068, 68 Cal. Rptr.2d 859, 946 P.2d 817.) The doctrine does not apply, however, to a participant of a sport who intentionally injures another participant or is engaged in "conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport." (Knight, supra, at p. 320, 11 Cal.Rptr.2d 2, 834 P.2d 696, fn. omitted.)
Secondary assumption of risk arises where the defendant owes a duty of *281 care to the plaintiff but the plaintiff knowingly encounters a risk of injury caused by the defendant's breach of that duty. (Kahn, supra, 31 Cal.4th at pp. 1003-1004, 4 Cal.Rptr.3d 103, 75 P.3d 30; Knight, supra, 3 Cal.4th at p. 308, 11 Cal.Rptr.2d 2, 834 P.2d 696.) The secondary assumption of risk doctrine has been merged into the comparative negligence system adopted in Li v. Yellow Cab Co. (1975) 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226. (Knight, supra, at p. 308, 11 Cal. Rptr.2d 2, 834 P.2d 696.) Under comparative negligence principles, the plaintiff's decision to face the risk does not operate as a complete bar to recovery; rather, the plaintiff's knowing and voluntary acceptance of the risk functions as a form of contributory negligence. (Kahn, supra, at p. 1003, 4 Cal.Rptr.3d 103, 75 P.3d 30.)
"Whether primary or secondary assumption of risk applies `turns on whether, in light of the nature of the sporting activity in which defendant and plaintiff were engaged, defendant's conduct breached a legal duty of care to plaintiff.' [Citation.] The test is objective; it `depends on the nature of the sport or activity in question and on the parties' general relationship to the activity' rather than `the particular plaintiff's subjective knowledge and awareness ....' [Citation.]" (Cheong v. Antablin, supra, 16 Cal.4th at p. 1068, 68 Cal.Rptr.2d 859, 946 P.2d 817.) Illustrating application of this test, "`[p]rimary assumption of risk occurs where a plaintiff voluntarily participates in a sporting event or activity involving certain inherent risks. For example, an errantly thrown ball in baseball or a carelessly extended elbow in basketball are considered inherent risks of those respective sports. [Citation.]' (Wattenbarger v. Cincinnati Reds, Inc. (1994) 28 Cal.App.4th 746, 751, 33 Cal.Rptr.2d 732.) `Duty is constricted in such settings because the activity involves inherent risks which cannot be eliminated without destroying the sport itself.' (Yancey v. Superior Court (1994) 28 Cal.App.4th 558, 565 [33 Cal. Rptr.2d 777].)" (Record v. Reason (1999) 73 Cal.App.4th 472, 480-481, 86 Cal. Rptr.2d 547; see also Peart v. Ferro (2004) 119 Cal.App.4th 60, 71-72, 13 Cal.Rptr.3d 885 [primary assumption of risk "doctrine has been applied specifically to sports and sport-related activities involving physical skill and challenges posing significant risk of injury to participants in such activities, and as to which the absence of such a defense would chill vigorous participation in the sporting activity and have a deleterious effect on the nature of the sport as a whole"].) On the other hand, "[i]f it is determined that the actions of a defendant did increase the risk of harm above that inherent in the sport, primary assumption of the risk is not available and the issue becomes one of secondary assumption of the risk. [Citation.]" (Sanchez v. Hillerich Bradsby Co. (2002) 104 Cal.App.4th 703, 712, 128 Cal.Rptr.2d 529.)

2. Assumption of risk doctrine applied to the sport of golf.
In asserting that the trial court's initial grant of summary judgment should not have been disturbed, appellant relies on several cases holding that the primary assumption of risk doctrine applies to the sport of golf. More specifically, American Golf Corp. v. Superior Court (2000) 79 Cal.App.4th 30, 93 Cal.Rptr.2d 683 (American Golf) held that the primary assumption of risk doctrine barred a golfer's action against a golf course, in which the golfer alleged the golf course negligently designed and placed its yardage markers and sought damages for injuries she sustained after being hit by a golf ball that ricocheted off one of the markers. In fairly broad language, the American Golf court stated: "Golf is an active sport to *282 which the assumption of the risk doctrine applies. [Citation.] `Hitting a golf ball at a high rate of speed involves the very real possibility that the ball will take flight in an unintended direction. If every ball behaved as the golfer wished, there would be little "sport" in the sport of golf. That shots go awry is a risk that all golfers, even the professionals, assume when they play.' [Citation.] Errant golf shots may strike a fixed object, such as a rock, tree or fence, ricochet, and strike another player." (Id. at pp. 37-38, 93 Cal.Rptr.2d 683.)
American Golf relied on Dilger v. Moyles (1997) 54 Cal.App.4th 1452, 63 Cal. Rptr.2d 591 (Dilger), which held that the primary assumption of risk doctrine barred a golfer's suit against another golfer, after the former was hit by a golf ball being shot from an adjacent fairway. The court concluded that the risk of errant shots was inherent in the sport and that "[h]olding participants liable for missed hits would only encourage lawsuits and deter players from enjoying the sport." (Id. at p. 1455, 63 Cal.Rptr.2d 591.) The court further rejected the argument that the defendant golfer's failure to comply with golf etiquette by warning of the shot did not equate with a breach of any duty, explaining: "When the activity involved is an inherent risk of a sport, a participant owes no duty to coparticipants unless he `intentionally injures another player or engages in reckless conduct that is totally outside the range of the ordinary activity involved in the sport.' [Citation.] We do not believe the failure to yell `fore' is that reckless or intentional conduct ...." (Id. at p. 1456, 63 Cal.Rptr.2d 591.)
Dilger, in turn, relied on Morgan v. Fuji Country USA, Inc. (1995) 34 Cal.App.4th 127, 40 Cal.Rptr.2d 249 (Morgan). There, a golfer brought an action against a golf course after being hit by an errant ball from a neighboring fairway. He asserted that the golf course breached its duty to provide him a reasonably safe golf course, and in so doing, unreasonably increased the inherent risks in the sport of golf. (Id. at pp. 131-132, 40 Cal.Rptr.2d 249.) Reversing summary judgment in favor of the golf course, the appellate court concluded that a golf course owes a duty of care toward a golfer to provide a reasonably safe course and that "[t]his duty requires the golf course owner `to minimize the risks without altering the nature of the sport. [Citations.]' [Citation.]" (Id. at p. 134, 40 Cal.Rptr.2d 249.) In view of the existence of a duty, the case was one of secondary assumption of risk and inappropriate for summary judgment given evidence that could support a finding that the course design constituted a breach of that duty. (Id. at pp. 134-135, 40 Cal.Rptr.2d 249.)
The Morgan court was careful to distinguish the relationships between golfer and golf course and between golfers themselves, noting that "if the relationship between the parties was one of coparticipants, i.e., if the defendant here were the golfer who hit the errant ball, this would clearly be a primary assumption of the risk case under Knight and the defendant would have no liability towards [plaintiff] because there is an inherent risk that the defendant would hit an errant ball." (Morgan, supra, 34 Cal.App.4th at p. 134, 40 Cal.Rptr.2d 249.) It explained that while a golf course owes a duty of reasonable care in the form of providing a reasonably safe course, "[a]s between golfers, the duty is to play within the bounds of the game; to not intentionally injure another player or to engage in conduct `that is so reckless as to be totally outside the range of the ordinary activity involved in' golf." (Ibid.)

3. Assumption of risk doctrine applied to the undisputed evidence.
Appellant contends that the circumstances here are no different than *283 those in American Golf, Dilger and Morgan. He asserts that Shin assumed the risk of being hit by an errant ball and that the primary assumption of risk doctrine therefore applies to bar liability. We disagree. The circumstances here do not involve a golfer being hit by an errant ball from another fairway. Rather, the undisputed evidence submitted on summary judgment showed that appellant, who was in the same threesome as Shin, failed to establish Shin's whereabouts at the time he teed off. He conceded that there was "[n]o particular reason" why he did not wait to tee off until he knew where Shin was standing.
Under these circumstances, we agree with the trial court's conclusion that, as a matter of law, appellant owed Shin a duty of care "to play within the bounds of the game; to not intentionally injure another player or to engage in conduct `that is so reckless as to be totally outside the range of the ordinary activity involved in' golf." (Morgan, supra, 34 Cal.App.4th at p. 134, 40 Cal.Rptr.2d 249.) This duty included the duty to ascertain Shin's whereabouts before hitting the ball. It was appropriate for the trial court to make this threshold determination: "In a given active sport setting, the question whether the defendant owes a duty to the plaintiff `is a legal question which depends on the nature of the sport or activity in question and on the parties' general relationship to the activity, and is an issue to be decided by the court, rather than the jury. [Citation.]'" (Staten v. Superior Court (1996) 45 Cal.App.4th 1628, 1632-1633, 53 Cal. Rptr.2d 657.) In determining the scope of the defendant's duty, the court decides whether an activity is an active sport, the inherent risks of that sport, and whether the defendant has increased the risks beyond the risks inherent in the sport. (Id. at pp. 1633-1634, 53 Cal.Rptr.2d 657.)
Here, the trial court acknowledged that golf is considered an active sport that includes the inherent risk of one being hit by an errant ball. (See, e.g., American Golf, supra, 79 Cal.App.4th at pp. 37-38, 93 Cal.Rptr.2d 683.) But it further concluded that a golfer who tees off without ascertaining the location of the individuals in his own group increases such a risk beyond that inherent in the sport. The decisions in both Yancey v. Superior Court (1994) 28 Cal.App.4th 558, 33 Cal.Rptr.2d 777 (Yancey) and Allen v. Pinewood Country Club, Inc. (La.App.1974) 292 So.2d 786 (Allen) support that conclusion.
In Yancey, the plaintiff suffered injuries after being hit by a discus in a college physical education class; she had gone onto the field to retrieve her discus and the defendant, who was throwing next, failed to observe the field before his throw. (Yancey, supra, 28 Cal.App.4th at p. 561, 33 Cal.Rptr.2d 777.) Reversing summary judgment in favor of the defendant, the appellate court held that the doctrine of primary assumption of risk was inapplicable because the defendant "owed a duty of care to Yancey to ascertain that the target area was clear before he commenced his throw." (Id. at p. 566, 33 Cal.Rptr.2d 777.) In reaching this conclusion, the court found that application of the primary assumption of risk doctrine to a sport generally requires that two questions be answered affirmatively: "First, is the careless conduct of participants an inherent risk of the sport? Second, will imposition of a legal duty, with potential liability, alter the nature of the sport or chill participation in it?" (Id. at p. 565, 33 Cal. Rptr.2d 777.)
In answering the first question negatively, the court drew a distinction relevant here, explaining that while "[t]he discus, by its nature, involves launching a dangerous projectile .... the issue posed by the *284 facts alleged in the petitioner's complaint is much more specifici.e., is the careless conduct of a participant in throwing the discus without first ascertaining the target area is clear an inherent risk of the sport?" (Yancey, supra, 28 Cal.App.4th at p. 565, 33 Cal.Rptr.2d 777.) The court concluded that "[n]othing about the inherent nature of the sport requires that one participant who has completed a throw and is retrieving his or her discus should expect the next participant to throw without looking toward the landing area." (Id. at p. 566, 33 Cal.Rptr.2d 777, fn. omitted.) Significantly, the court analogized discus throwing to golf, explaining: "Discus bears some similarity to golf. Neither sport has, as one of its objectives, the endangering of coparticipants. Anyone playing golf is subjected to a risk of being hit by a ball struck by another golfer on the course. Still, it is common knowledge that golfers check their intended target area and make sure it is clear before hitting a shot . . . . Nothing in the facts alleged in Yancey's complaint support a legal conclusion that similar commonsense precautions are inappropriate in a physical education discus class." (Ibid.) Also answering the second question negatively, the Yancey court reasoned that "[r]equiring discus participants to check the target area before launching a throw will not alter or destroy the inherent nature of the activity itself" and would, at most, "cause a slight delay before the thrower begins." (Ibid.)
Illustrating application of the hypothetical golf situation posed in Yancey, the court in Allen, supra, 292 So.2d at page 789, reversed the dismissal of an action brought by a golfer against a member of his foursome which alleged that the defendant was negligent when he hit a shot on the fairway, knowing that the plaintiff was in the ball's intended line of flight and was unaware that the defendant was about to strike the ball. The court found that the principle that a golfer assumes the risk of being hit by an errant ball was inapplicable and "that plaintiff had the right to assume a member of his own party would not drive while plaintiff was standing in full view near the intended line of flight with plaintiff's back turned toward the impending play. This was a risk plaintiff did not assume." (Id. at p. 790; accord Schick v. Ferolito (A.D.2000) 327 N.J.Super. 530, 744 A.2d 219, 221 [rule that "a golfer hitting a ball has a duty to use reasonable care before executing a swing, to first observe whether there is anybody else in the line of fire, and if so, to provide an adequate warning" applied to golfer who hit an unannounced and unexpected Mulligan after all other members of the foursome had teed off, as such a shot was not an inherent part of the game].)
In evaluating the trial court's determination of duty here, we are guided by the two questions posed in Yancey  whether the careless conduct at issue is an inherent part of the sport and whether the imposition of a duty will alter the nature of or chill participation in the sport. (Yancey, supra, 28 Cal.App.4th at p. 565, 33 Cal.Rptr.2d 777.) While certainly we agree with the court in American Golf that there is always an inherent risk that a golf ball will take an unintended direction (see American Golf, supra, 79 Cal.App.4th at pp. 37-38, 93 Cal.Rptr.2d 683), the issue here was whether Shin assumed the risk of a member of his own threesome teeing off without first checking to see where he was standing. (See Yancey, supra, at pp. 565-566, 33 Cal.Rptr.2d 777.) Indeed, these circumstances are not akin to a golfer unintentionally hitting a ball into a neighboring fairway, but rather, are similar to a golfer hitting a ball onto a fairway when the preceding foursome is well within range of the shot and without ascertaining whether the foursome is aware of the impending *285 shot. We cannot find that Shin assumed the risk of appellant's teeing off without first ascertaining his whereabouts. According to the evidence on summary judgment, one of the first rules of golf promulgated by the United States Golf Association is that before playing a stroke or making a practice swing, "the player should ensure that no one is standing close by or in a position to be hit by . . . the ball ...." The undisputed evidence further showed that appellant did not comply with this rule. As such, appellant's conduct was not an inherent part of the sport and involved an increase in golf's inherent risks.[3] (See Huff v. Wilkins, supra, 138 Cal.App.4th at p. 743, 41 Cal.Rptr.3d 754 [reversing summary judgment in favor of a minor who unlawfully drove an all-terrain vehicle (ATV) and collided with the plaintiff, because "[a]lthough a collision between ATV's was an inherent risk of the sport of off-roading, [defendant's] failure to comply with the safety regulations was not an inherent risk, for reasons discussed, and to any extent the failure increased the risk of a collision, [plaintiff] did not assume the increased risk merely by participating in the sport"].)
Furthermore, imposing a duty on a golfer to determine the whereabouts of the individuals in his group before teeing off does nothing to alter or destroy the nature of the activity. (See Yancey, supra, 28 Cal.App.4th at p. 566, 33 Cal.Rptr.2d 777 ["Neither do we see any indication that `vigorous participation' in the discus likely would be chilled if legal liability were imposed on a participant for injury caused by his or her failure to observe that the target area is clear before throwing the discus"]; compare Avila v. Citrus Community College Dist. (2006) 38 Cal.4th 148, 165, 41 Cal.Rptr.3d 299, 131 P.3d 383 [explaining that imposing liability for a pitch intentionally thrown at a batter would alter the nature of the game of baseball, as "[i]t is one thing for an umpire to punish a pitcher who hits a batter by ejecting him from the game, or for a league to suspend the pitcher; it is quite another for tort law to chill any pitcher from throwing inside, i.e., close to the batter's bodya permissible and essential part of the sportfor fear of a suit over an errant pitch"].)
The trial court properly concluded that appellant owed Shin a duty to ascertain his whereabouts before teeing off. Where the defendant is held to have owed a duty of care not to increase the risk beyond that inherent in the sport, and the evidence supports the conclusion that the defendant breached that duty, summary judgment is unavailable. (E.g., Campbell v. Derylo (1999) 75 Cal.App.4th 823, 830, 89 Cal.Rptr.2d 519; Lowe v. California League of Prof. Baseball (1997) 56 Cal. App.4th 112, 123, 65 Cal.Rptr.2d 105.) Accordingly, because it would have been an error in law for the trial court to grant *286 summary judgment on the basis of the primary assumption of risk doctrine, the trial court properly granted Shin's motion for new trial.

4. Application of the doctrine of secondary assumption of risk.
Where the issue is whether the defendant increased the risk of harm above that inherent in the sport, the doctrine of secondary assumption of risk applies. (Sanchez v. Hillerich Bradsby Co., supra, 104 Cal.App.4th at p. 712, 128 Cal.Rptr.2d 529.) While there is no question that it is within the sole province of the trial court to determine the existence and scope of a duty not to increase the risk inherent in a sport, case law appears to be in conflict as to whether the determination a defendant breached that duty is a question for the court or the jury. (Compare, e.g., Huff v. Wilkins, supra, 138 Cal.App.4th at p. 745, 41 Cal.Rptr.3d 754 ["We conclude it is the trial court's province to determine whether the defendants breached their duty not to increase the inherent risk of a collision, and it should hold a hearing for this purpose before impaneling a jury"] with Vine v. Bear Valley Ski Co. (2004) 118 Cal. App.4th 577, 593, 13 Cal.Rptr.3d 370 ["If the jury, properly instructed on the scope of the defendant's duty, determines the defendant did increase the inherent risk, it then considers the plaintiff's claim based on secondary assumption of risk as an aspect of the plaintiff's comparative fault"].)
In view of the record before us, however, we need not resolve this conflict. The trial court determined that appellant owed a duty of care to ascertain Shin's whereabouts before teeing off, and the evidence was undisputed that he did not do so. On the basis of this evidence, we conclude, as a matter of law, that appellant breached his duty of care. (See, e.g., Jordan v. Allstate Ins. Co. (2004) 116 Cal. App.4th 1206, 1212, 11 Cal.Rptr.3d 169 [where the facts are undisputed, the appellate court can resolve the question as a matter of law in accordance with the general principles governing summary judgment].)
But as the trial court acknowledged, evidence that Shin's conduct in stopping at a location within the range of appellant's potential tee shot, without alerting appellant of his presence, raised issues of comparative negligence. Because secondary assumption of risk involves "those instances in which the defendant does owe a duty of care to the plaintiff but the plaintiff knowingly encounters a risk of injury caused by the defendant's breach of that duty," the obligation of the trier of fact is to apportion fault based upon "a flexible, commonsense" consideration of the comparative fault of the parties. (Knight, supra, 3 Cal.4th at pp. 308, 314, 11 Cal.Rptr.2d 2, 834 P.2d 696.) The trier of fact must weigh and compare both the defendant's breach of the legal duty to plaintiff and the plaintiff's voluntary decision to engage in the activity in spite of the defendant's breach. (Id. at p. 314, 11 Cal. Rptr.2d 2, 834 P.2d 696.) "Whether (and by how much) it is fair to reduce a plaintiff's recovery for injuries caused by the defendant's negligent elevation of the risk, even if the plaintiff was unaware of the increase in the risk, is a question for the trier of fact to decide in light of the particular circumstances of each case." (Vine v. Bear Valley Ski Co., supra, 118 Cal. App.4th at p. 600, 13 Cal.Rptr.3d 370.)
Accordingly, the purpose of any trial in this matter will be to apportion fault as between appellant and Shin. (See Sanchez v. Hillerich Bradsby Co., supra, 104 Cal.App.4th at p. 715, 128 Cal.Rptr.2d 529 ["Comparing the relative fault of plaintiff and defendants is a question of fact that must be resolved by a trier of fact and *287 cannot be resolved by way of a summary judgment motion"].)

DISPOSITION
The order granting a new trial is affirmed and the matter is remanded to the trial court in accordance with the views expressed herein. Respondent is awarded his costs on appeal.
I concur: CHAVEZ, J.
BOREN, P.J.
I respectfully dissent. The order granting a new trial should be reversed, and the grant of summary judgment reinstated, because this is a classic case of primary assumption of the risk, not secondary assumption of the risk.
"The existence of `"`[d]uty' is not an immutable fact of nature `"but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection."'"' [Citation.]" (Avila v. Citrus Community College Dist. (2006) 38 Cal.4th 148, 160, 41 Cal.Rptr.3d 299, 131 P.3d 383 (Avila).) "Primary assumption of the risk arises when, as a matter of law and policy, a defendant owes no duty to protect a plaintiff from particular harms. [Citation.] Applied in the sporting context, it precludes liability for injuries arising from those risks deemed inherent in a sport; as a matter of law, others have no legal duty to eliminate those risks or otherwise protect a sports participant from them. [Citation.] Under this duty approach, a court need not ask what risks a particular plaintiff subjectively knew of and chose to encounter, but instead must evaluate the fundamental nature of the sport and the defendant's role in or relationship to that sport in order to determine whether the defendant owes a duty to protect a plaintiff from the particular risk of harm." (Id. at p. 161, 41 Cal. Rptr.3d 299, 131 P.3d 383.) Primary assumption of the risk is a complete bar to the plaintiff's recovery. (Knight v. Jewett (1992) 3 Cal.4th 296, 314-315, 11 Cal. Rptr.2d 2, 834 P.2d 696 (Knight).) On the other hand, secondary assumption of the risk, implicating principles of comparative fault, applies "[i]f it is determined that the actions of a defendant did increase the risk of harm above that inherent in the sport." (Sanchez v. Hillerich & Bradsby Co. (2002) 104 Cal.App.4th 703, 711-712, 128 Cal. Rptr.2d 529.)
The reviewing court independently reviews an order granting a new trial after a grant of summary judgment, scrutinizing de novo the trial court's determination that it made an error of law in granting summary judgment. (Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 859-860, 107 Cal.Rptr.2d 841, 24 P.3d 493.) I believe that the trial court's determination in granting a new trial went astray, and the order granting a new trial was not based on correct legal principles.
The limited duty of care set forth in Knight as to active sports such as touch football has been applied to the game of golf. (Dilger v. Moyles (1997) 54 Cal. App.4th 1452, 1454, 63 Cal.Rptr.2d 591 (Dilger).) Dilger held that the failure of a golfer to comply with "golf etiquette" by warning another golfer that his shot may endanger the other does not constitute a breach of any duty of care. (Id. at p. 1455, 63 Cal.Rptr.2d 591.) The court there relied on the principles set forth in Knight, supra, 3 Cal.4th at page 318, 11 Cal. Rptr.2d 2, 834 P.2d 696, to state that "[w]hen the activity involved is an inherent risk of a sport, a participant owes no duty to coparticipants unless he `intentionally injures another player or engages in reckless conduct that is totally outside the range of the ordinary activity involved in the sport.' [Citation.] We do not believe the failure to yell `fore' is that reckless or intentional conduct contemplated by the *288 Knight court." (Dilger, supra, at p. 1456, 63 Cal.Rptr.2d 591.) The Dilger court therefore held that primary assumption of the risk barred one golfer's suit against another golfer after the former was hit by a ball shot from the next fairway, even if the defendant was negligent in failing to warn the plaintiff. (Ibid.)
Dilger also relied on Morgan v. Fuji Country USA, Inc. (1995) 34 Cal.App.4th 127, 40 Cal.Rptr.2d 249 (Morgan), which distinguished the relationship between a golf course and a golfer, on the one hand, and the relationship between golfers, on the other. Relying on Knight, the Morgan court held that while a golf course owes a duty of care to a golfer to provide a reasonably safe golf course, giving rise to secondary assumption of the risk, the principle of primary assumption of the risk bars recovery as between golfers. (Id. at p. 134, 40 Cal.Rptr.2d 249.) "As between golfers, the duty is to play within the bounds of the game; to not intentionally injure another player or to engage in conduct `that is so reckless as to be totally outside the range of the ordinary activity involved in' golf. [Citation.]" (Morgan, at p. 134, 40 Cal.Rptr.2d 249.)
While Dilger involved a golf ball shot from a neighboring fairway, and this case involves a ball striking a coparticipant on the same fairway, no different result is required. The evidence indicated that appellant's conduct resulting in injury to Shin was, at most, careless or negligent. It was neither intentional nor "so reckless as to be totally outside the range of the ordinary activity involved in" golf. (Knight, supra, 3 Cal.4th at p. 320, 11 Cal.Rptr.2d 2, 834 P.2d 696.) Rather, respondent Shin chose to stop in close proximity to his coparticipant to take out his water bottle and check his phone for messages at the very time his coparticipant was walking toward the tee box and preparing to tee off. Shin's duty was, in the words of W.C. Fields, to "[s]tand clear and keep [his] eye on the ball."[1] Being hit by a ball is an inherent risk of golf; "[t]hat shots go awry is a risk that all golfers, even the professionals, assume when they play." (Dilger, supra, 54 Cal.App.4th at p. 1455, 63 Cal.Rptr.2d 591.) Having placed himself in harm's way at the time appellant was preparing to swing, Shin is in no position to complain that appellant increased the inherent risk of the game by failing to shout "fore" or to confirm Shin's location.
The cases on which the majority relies[2] are not persuasive in the circumstances presented here. Rather, Dilger and Morgan, which in turn are based upon the Supreme Court's formulation in Knight, are controlling. If a golfer owes no duty of care to someone on another fairway, he owes no duty of care to a member of his own foursome when he tees off. While "an athlete does not assume the risk of a coparticipant's intentional or reckless conduct `totally outside the range of the ordinary activity involved in the sport'" (Avila, supra, 38 Cal.4th at p. 165, 41 Cal. *289 Rptr.3d 299, 131 P.3d 383), the evidence indicates, at most, that appellant was careless or negligent rather than reckless, and appellant did nothing outside the range of the ordinary activity involved in golf that enhanced the inherent risk of the sport. The doctrine of secondary assumption of the risk therefore is inapplicable in this case.
In the absence of any duty of care owed by appellant to Shin, the trial court's initial order granting the motion for summary judgment was proper, and the order granting a new trial should be reversed. I would add that this case illustrates the point made by Justice Mosk in his concurring and dissenting opinion in Knight, supra, 3 Cal.4th 296, 11 Cal.Rptr.2d 2, 834 P.2d 696, where he stated, "Were we to eliminate the doctrine of assumption of the risk, we would put an end to the doctrinal confusion that now surrounds apportionment of fault in such cases." (Id. at p. 322, 11 Cal.Rptr.2d 2, 834 P.2d 696.)
NOTES
[1] With the exception of sustaining an objection to one statement by Shin's expert concerning some unrelated work experience, the trial court overruled all evidentiary objections.
[2] "One qualification to this rule is that the appellate court cannot affirm on the grounds of insufficiency of the evidence or of excessive or inadequate damages unless such ground was specified in the trial court's order. ( [Code of Civ. Proc.,] § 657.)" (Sanchez-Corea v. Bank of America, supra, 38 Cal.3d at p. 899, 215 Cal.Rptr. 679, 701 P.2d 826.)
[3] We are somewhat troubled by the same concerns raised by the court in Staten v. Superior Court, supra, 45 Cal.App.4th 1628, 53 Cal.Rptr.2d 657. There, the court characterized the prohibition of considering expert testimony in determining the legal question of duty as "cramm[ing] a square peg of fact into the round hole of legal duty: whether there is or is not a duty in a primary assumption of risk case turns on the question whether a given injury is within the `inherent' risk of the sport, which in turn can only be determined on a set of factual conceptions of the particular sport and how it is played." (Id. at p. 1635, 53 Cal.Rptr.2d 657.) We agree with the Staten court's suggestion that courts be permitted to receive expert evidence on the factual nature of the sport, though not on the ultimate legal questions of inherent risk and duty. (Id. at p. 1637, 53 Cal.Rptr.2d 657.) For this reason, it would have been proper for the trial court to consider the expert declarations only to the extent they described factual principles related to the game, but not to the extent that they contained opinions as to whether there was a breach of duty.
[1] "The Golf Specialist," 1930.
[2] These cases include Yancey v. Superior Court (1994) 28 Cal.App.4th 558, 33 Cal. Rptr.2d 777 (plaintiff who was hit by discus, after defendant failed to ascertain that target area was clear, was owed duty of care by defendant; court commented that "[d]iscus bears some similarity to golf.... [I]t is common knowledge that golfers check their intended target area and make sure it is clear before hitting a shot" (id. at p. 566, 33 Cal. Rptr.2d 777)); Schick v. Ferolito (A.D.2000) 327 N.J.Super. 530, 744 A.2d 219 (golfer hit unnanounced and unexpected shot from tee after all four players had teed off; golfer had duty to check whether anyone was in line of fire and to provide warning because shot was not inherent part of game); and Allen v. Pinewood Country Club, Inc. (La.App.1974) 292 So.2d 786 (finding defendant negligent based on principle that golfer must shout "fore").