[No. D019292. Fourth Dist., Div. One. Apr. 24, 1995.]

WILLIAM C. MORGAN et al., Plaintiffs and Appellants, v.
FUJI COUNTRY USA, INC., Defendant and Respondent.

## Counsel

John F. Murphy, Benjamin Casillas and James W. Lock for Plaintiffs and Appellants.

Lincoln, Gustafson & Cercos, Randall D. Gustafson and Emily A. Benjamini for Defendant and Respondent.

## Opinion

**KREMER, P. J.**—Plaintiff William C. Morgan appeals a summary judgment favoring Fuji Country USA, Inc. (Fuji), doing business as Castle Creek Country Club, on his complaint for personal injuries.[1] Morgan was hit on the head by an errant golf ball while playing on Fuji's golf course. He contends the court erred in granting summary judgment based on primary assumption of the risk. We reverse.

---

[1]Morgan's wife also was a plaintiff and appealed the summary judgment.

# I

## FACTUAL AND PROCEDURAL BACKGROUND

On Fuji's golf course, several mature pine trees stood between the fourth green and the fifth tee. One of the pines shaded the fifth tee area and a nearby concrete cart path.

Morgan was a member of Castle Creek Country Club and golfed two to three times per week. Occasionally, Morgan watched golf balls hit from the fourth tee fly over the large pine tree and land on either the fifth tee or the adjacent fifth green. In addition, Morgan "many times" saw balls hit from the fourth tee get caught in the boughs of the tree. For protection from flying golf balls, Morgan would routinely stand underneath this particular tree if other golfers ahead of him had not yet cleared the fifth tee area.

The tree became diseased and Fuji removed it a few months before Morgan's accident. After Fuji removed the tree, Morgan saw at least four golf balls hit from the fourth tee almost strike golfers who were standing on the fifth tee box. Morgan stated the balls hit from the fourth tee traveled farther after Fuji had removed the tree.

On the day of the accident, Morgan walked from the fifth tee box to a bench alongside the cart path to return to his golf cart and bag after he finished his turn.[2] While putting away his club, Morgan was hit by an errant golf ball hit from the fourth tee. The ball had bounced on the cart path before hitting Morgan.

Morgan sued Fuji for compensatory damages on the grounds of negligence, premises and landowner's liability. Fuji filed a motion for summary judgment, asserting Morgan knowingly assumed the risk of being struck with a golf ball and Fuji was therefore entitled to summary judgment as a matter of law. The superior court ruled in favor of Fuji on the basis primary assumption of the risk operated as a complete bar to Morgan's claim.

---

[2]At the time of the accident, Morgan was standing on the cart path in front of the bench where he had left his golf bag. This area is located near the fifth tee.

## II

### DISCUSSION

### A

#### *Summary Judgment Standard*

The summary judgment procedure aims to discover whether there is evidence requiring the fact-weighing procedures of trial. (*Decker* v. *City of Imperial Beach* (1989) 209 Cal.App.3d 349 [257 Cal.Rptr. 356].) "[T]he trial court in ruling on a motion for summary judgment is merely to determine whether such issues of fact exist, and not to decide the merits of the issues themselves." (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) The trial judge determines whether triable issues of fact exist by reviewing the affidavits and evidence before him or her and the reasonable inferences which may be drawn from those facts. (*Gootee* v. *Lightner* (1990) 224 Cal.App.3d 587, 591 [274 Cal.Rptr. 697].)

To be entitled to summary judgment, the moving defendant must establish as a matter of law that none of plaintiff's asserted causes of action can prevail. A defendant may do so as to a particular cause of action by establishing, as a matter of undisputed fact, that it has a complete defense to that cause of action. (*Freeman* v. *Hale* (1994) 30 Cal.App.4th 1388 [36 Cal.Rptr.2d 418].) The moving party must provide supporting documents that establish the claims of the adverse party are entirely without merit on any legal theory (*Southland Corp.* v. *Superior Court* (1988) 203 Cal.App.3d 656, 663 [250 Cal.Rptr. 57]) and establish there is no duty owed to the plaintiff. (*Davis* v. *Gaschler* (1992) 11 Cal.App.4th 1392 [14 Cal.Rptr.2d 679].)

In reviewing the propriety of a summary judgment, the appellate court must resolve all doubts in favor of the party opposing the judgment. (*Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 183 [203 Cal.Rptr. 626, 681 P.2d 893].) The reviewing court conducts a de novo examination to see whether there are any genuine issues of material fact or whether the summary judgment is proper as a matter of law. (*Lichty* v. *Sickels* (1983) 149 Cal.App.3d 696, 699 [197 Cal.Rptr. 137].)

### B

#### *Duty of Care and Assumption of the Risk*

Relying on *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696], the trial court granted summary judgment ruling primary assumption of the risk completely barred Morgan's claim.

Morgan asserts his case to be governed by the "duty" analysis of the secondary assumption of the risk doctrine. Morgan argues: Fuji owed him, a dues-paying member of Castle Creek Country Club, a duty of care to provide a reasonably safe golf course, and owed him and all other Castle Creek golfers a duty not to increase the risk of harm over and above the inherent risk of the sport.

The Supreme Court in *Knight* v. *Jewett, supra,* 3 Cal.4th 296 and its companion case, *Ford* v. *Gouin* (1992) 3 Cal.4th 339 [11 Cal.Rptr.2d 30, 834 P.2d 724], addressed the "assumption of risk" doctrine in negligence cases in light of California comparative fault principles adopted in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226]. The court delineated two categories of assumption of the risk cases: "primary" and "secondary" assumption of the risk. ■ Primary assumption of the risk "embodies a legal conclusion that there is 'no duty' on the part of the defendant to protect the plaintiff from a particular risk." (*Knight* v. *Jewett, supra,* 3 Cal.4th 296, 308.) In primary assumption of the risk cases, if there is no duty of care owed, the plaintiff's assumption of the risk acts as a complete bar to the plaintiff's cause of action. (*Ibid.*) Secondary assumption of the risk, in contrast, refers to those instances in which the defendant owes a duty of care, but the plaintiff knowingly encounters a risk created by the breach of the duty. (*Knight* v. *Jewett, supra,* 3 Cal.4th 296, 310.) Unlike primary assumption of the risk cases, secondary assumption of the risk cases are subsumed into the comparative fault scheme, and a plaintiff's assumption of that risk does not act as a bar to the action. (*Knight* v. *Jewett, supra,* 3 Cal.4th 296, 315.)

The *Knight* court addressed the assumption of the risk doctrine in the sports setting. ■ The court held "the nature of a defendant's duty in the sports context depends heavily on the nature of the sport itself" as well as "on the defendant's role in, or relationship to, the sport." (*Knight* v. *Jewett, supra,* 3 Cal.4th 296, 316-317.)

In addressing the nature of the sport, the *Knight* court recognized certain risks are inherent in a sport. In *Knight,* the court concluded that inherent in an "active" sport such as touch football or basketball is a risk one player will injure another through careless or negligent play and those risks are subsumed under primary assumption of the risk. Only when a player "intentionally injures another player or engages in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport" will the court find a breach of the legal duty of care. (*Knight* v. *Jewett, supra,* 3 Cal.4th 296, 320.)

Here, the sport is golf. Fuji argues since it is undisputed that being struck by an errant golf ball is an inherent risk of the sport, this is a primary assumption of the risk case and it breached no duty of care towards Morgan.

Fuji is correct that this fact is undisputed. Morgan, in his deposition, admitted while playing golf there is always the possibility of being hit by an errant golf ball. However, before concluding a case falls within primary assumption of the risk it is not only necessary to examine the nature of the sport but also the "defendant's role in, or relationship to, the sport." (*Knight v. Jewett*, *supra*, 3 Cal.4th 296, 317.) The *Knight* court explained this "point is demonstrated by a review of one of the numerous cases involving an injury sustained by a spectator at a baseball game. In *Ratcliff* v. *San Diego Baseball Club* (1938) 27 Cal.App.2d 733 . . . , a baseball spectator was injured when, walking in the stands between home plate and first base during a game, she was hit by an accidentally thrown bat. She sued both the player who threw the bat and the baseball stadium owner. The jury returned a verdict in favor of the player, but found the stadium owner liable. . . .

". . . [T]he court implicitly recognized that two different potential duties were at issue—(1) the duty of the ballplayer to play the game without carelessly throwing his bat, and (2) the duty of the stadium owner to provide a reasonable safe stadium with regard to the relatively common (but particularly dangerous) hazard of a thrown bat. Because each defendant's liability rested on a separate duty, there was no inconsistency in the jury verdict absolving the batter of liability but imposing liability on the stadium owner for its failure to provide the patron 'protection from flying bats, at least in the area where the greatest danger exists and where such an occurrence is reasonably to be expected.' [Citation.]" (*Knight* v. *Jewett*, *supra*, 3 Cal.4th 296, 317.)

The *Knight* court observed "[o]ther cases also have analyzed in a similar fashion the duty of the owner of a ballpark or ski resort, in the process of defining the risks inherent in the sport not only by virtue of the nature of the sport itself, but also by reference to the steps the sponsoring business entity reasonably should be obligated to take in order to minimize the risks without altering the nature of the sport. [Citations.]" (*Knight* v. *Jewett*, *supra*, 3 Cal.4th 296, 317.)

The *Knight* court considered the situation where the defendant is the owner or operator of a property used for a particular sport. ■ The court noted while property owners ordinarily are required to use due care to eliminate dangerous conditions on their property, some conditions of property "that otherwise might be viewed as dangerous often are an integral part of the sport itself" and a property owner has no duty to remove them. (*Knight* v. *Jewett*, *supra*, 3 Cal.4th 296, 315.) For example, the court observed "although moguls on a ski run pose a risk of harm to skiers that might not exist were these configurations removed, the challenge and risks posed by

the moguls are part of the sport of skiing, and a ski resort has no duty to eliminate them. [Citation.]" (*Ibid.*; see also *O'Donoghue* v. *Bear Mountain Ski Resort* (1994) 30 Cal.App.4th 188, 193 [35 Cal.Rptr.2d 467].) In contrast, an owner of a sports facility does have a duty to use due care to remove risks which are not inherent in the sport. The court, using the example of a ski resort, explained the resort owner "clearly does have a duty to use due care to maintain its towropes in a safe, working condition so as not to expose skiers to an increased risk of harm" because this "type of risk, posed by a ski resort's negligence, clearly is not a risk (inherent in the sport) that is assumed by a participant. [Citation.]" (*Knight* v. *Jewett*, *supra*, 3 Cal.4th 296, 316.)

■ Here, if the relationship between the parties was one of coparticipants, i.e., if the defendant here were the golfer who hit the errant ball, this would clearly be a primary assumption of the risk case under *Knight* and the defendant would have no liability towards Morgan because there is an inherent risk that the defendant would hit an errant ball. Morgan, however, is not suing the other player; he is suing the owner and operator of the golf course.

Fuji, as owner and operator of the Castle Creek golf course owes a different duty to Morgan and other golfers. ■ As between golfers, the duty is to play within the bounds of the game; to not intentionally injure another player or to engage in conduct "that is so reckless as to be totally outside the range of the ordinary activity involved in" golf. (*Knight* v. *Jewett*, *supra*, 3 Cal.4th 296, 320.) The duty of a golf course towards a golfer is to provide a reasonably safe golf course. This duty requires the golf course owner "to minimize the risks without altering the nature of the sport. [Citations.]" (*Id.* at p. 317.) Thus, the owner of a golf course has an obligation to design a golf course to minimize the risk that players will be hit by golf balls, e.g., by the way the various tees, fairways and greens are aligned or separated. In certain areas of a golf course, because of the alignment or separation of the tee, fairway and/or greens, the golf course owner may also have a duty to provide protection for players from being hit with golf balls "where the greatest danger exists and where such an occurrence is reasonably to be expected [citation]" just as a baseball stadium owner may have a duty to provide protection for spectators from thrown bats or errant balls in that part of the stadium where the danger of being hit is particularly high and dangerous. (*Id.* at p. 317.)

■ We conclude this is a secondary assumption of the risk case where Fuji owed a duty of care to Morgan in the design and maintenance of its golf course. Morgan presented evidence indicating the area of the fifth tee

was a particularly dangerous place due to the design of the fourth and fifth tees and the removal of the trees. Such evidence could support a finding that Fuji breached the duty of care owed to Morgan.[3]

We conclude the court erred in granting summary judgment on the basis primary assumption of the risk barred Morgan's suit.

### DISPOSITION

The judgment is reversed. Costs to Morgan.

Benke, J., and Huffman, J., concurred.

Respondent's petition for review by the Supreme Court was denied July 27, 1995. Kennard, J., was of the opinion that the petition should be granted.

---

[3]Fuji argues because the risk of being hit by a golf ball is obvious, it owed no duty to Morgan. Under *Knight*, the obviousness of a risk may, however, support a duty to provide protection, e.g., as in the case of a baseball stadium where the stadium operator may be obligated to provide protection for spectators in an area where the danger and risk of being hit by a thrown bat or errant ball is particularly obvious.