[No. A074839. First Dist., Div. Four. May 15, 1997.]

DOROTHY DILGER, Plaintiff and Appellant, v.
DAVID MOYLES, Defendant and Respondent.

COUNSEL

Marble & Associates and David K. Marble for Plaintiff and Appellant.

Clapp, Moroney, Bellagamba, Davis & Vucinich, Christopher J. Beeman and Mark L. Dawson for Defendant and Respondent.

OPINION

ANDERSON, P. J.—Dorothy Dilger (appellant) was struck on the golf course by a ball hit by another golfer, David Moyles (respondent), whom she sued. She appeals the trial court's entry of summary judgment in his favor. We hold that the trial court was correct in finding that primary assumption of risk bars her lawsuit; accordingly, we affirm.

## I. FACTS

On the morning of April 26, 1994, appellant and two companions were golfing at Sky West Golf Course in Hayward. After teeing off on the fifth tee, appellant, who was 78 years old at the time, drove her golf cart to where her ball had landed—approximately 95 yards down the fairway. She stopped her cart on the left side of the fairway, which borders the fairway of the sixth hole. After stopping her cart, appellant was struck in the mouth by a ball hit by respondent from the sixth fairway. At the time he hit the ball, respondent was standing behind a row of trees which separated the fifth and sixth fairways. Respondent claimed these trees blocked the line of sight to where

appellant was located. Whether or not respondent yelled "fore" upon hitting his errant shot was disputed.

## II. ANALYSIS

■ Summary judgment may properly be granted if a defendant meets his burden of demonstrating that "one or more elements" of that cause of action "cannot be established" or that there is a "complete defense" to it, and plaintiff fails to meet her burden of showing a triable issue of material fact as to that defense. (Code Civ. Proc., § 437c, subd. (o)(2).) On appeal, we review de novo the record before the trial court. (*Chevron U.S.A., Inc.* v. *Superior Court* (1992) 4 Cal.App.4th 544, 548 [5 Cal.Rptr.2d 674].)

■ Appellant argues that the doctrine of assumption of risk is inappropriate as a defense for golfers. The California Supreme Court has found that participants generally do not have a duty to protect other participants against risks inherent in an active sport. (*Knight* v. *Jewett* (1992) 3 Cal.4th 296, 320 [11 Cal.Rptr.2d 2, 834 P.2d 696].) In *Knight* plaintiff's finger had to be amputated after defendant, a coparticipant, accidentally stepped on it during a game of touch football. (*Id.* at pp. 300-301.) The court held that defendant's conduct did not breach any legal duty of care owed to plaintiff. (*Id.* at p. 321.) The court found applicable the doctrine of assumption of risk to this sport because "vigorous participation in such sporting events likely would be chilled if legal liability were to be imposed on a participant on the basis of his or her ordinary careless conduct. . . . [E]ven when a participant's conduct violates a rule of the game and may subject the violator to internal sanctions prescribed by the sport itself, imposition of *legal liability* for such conduct might well alter fundamentally the nature of the sport by deterring participants from vigorously engaging in activity that falls close to, but on the permissible side of, a prescribed rule." (*Id.* at pp. 318-319, original italics.) The court expressly declined to decide whether this rule should apply to less active sports such as golf: "Because the touch football game at issue in this case clearly falls within the rationale of this rule, we have no occasion to decide whether a comparable limited duty of care appropriately should be applied to other less active sports, such as archery or golf." (*Id.* at p. 320, fn. 7.) Nevertheless, the court's reasoning in limiting active sports participants' liability applies equally as well to the sport of golf.

While golf may not be as physically demanding as other more strenuous sports such as basketball or football, risk is nonetheless inherent in the

sport.[1] Hitting a golf ball at a high rate of speed involves the very real possibility that the ball will take flight in an unintended direction. If every ball behaved as the golfer wished, there would be little "sport" in the sport of golf. That shots go awry is a risk that all golfers, even the professionals, assume when they play.

Holding participants liable for missed hits would only encourage lawsuits and deter players from enjoying the sport. Golf offers many healthful advantages to both the golfer and the community. The physical exercise in the fresh air with the smell of the pines and eucalyptus renews the spirit and refreshes the body. The sport offers an opportunity for recreation with friends and the chance to meet other citizens with like interests. A foursome can be a very social event, relieving each golfer of the stresses of business and everyday urban life. Neighborhoods benefit by the scenic green belts golf brings to their communities, and wild life enjoy and flourish in a friendly habitat. Social policy dictates that the law should not discourage participation in such an activity whose benefits to the individual player and to the community at large are so great.

We have recently applied the *Knight* principles to the sport of sailing, an arguably less active sport than golf. In *Stimson* v. *Carlson* (1992) 11 Cal.App.4th 1201, 1203-1204 [14 Cal.Rptr.2d 670], we found the defense applicable to the captain of a sailboat who failed to warn his passenger of an intended change in course, resulting in serious injury when the passenger was hit on the arm by the boat's mainsheet: "By eliminating liability for unintended accidents, the doctrine [primary assumption of risk] ensures that the fervor of athletic competition will not be chilled by the constant threat of litigation from every misstep, sharp turn and sudden stop. [Citation.] On a larger scale, participation in amateur athletics is a socially desirable activity that improves the mental and physical well-being of its participants. The freedom to enjoy such activity is preserved through application of the doctrine of primary assumption of the risk." (*Id.* at p. 1206.) While golf and sailing may involve less strenuous activity than touch football, and the risk of injury thus may be less, risk of injury is still a real possibility; therefore, golfers assume this risk upon stepping up to the first tee, just as do sailors on boarding or football players at kickoff.

Golf etiquette requires that a player whose shot may endanger another warn the other by shouting "fore." But golf etiquette does not necessarily rise to the level of a duty. If no duty was owed, the defense of primary

---

[1] Appellant claims that, "Golf is primarily an activity of the elderly and less athletic." If ever this contention had merit, recent events at the Masters and the dominant play of Tiger Woods belie it today.

assumption of risk completely bars recovery. (*Knight* v. *Jewett, supra,* 3 Cal.4th at pp. 314-315.) Whether a duty exists depends on whether the activity in question was an "inherent risk" of the sport. (*Id.* at p. 316.) The Fourth Appellate District has found that missed hits are an inherent risk of golf. (*Morgan* v. *Fuji Country USA, Inc.* (1995) 34 Cal.App.4th 127, 134 [40 Cal.Rptr.2d 249].) In *Morgan* plaintiff was hit on the head by an errant golf ball and sued Fuji, the golf course on which he was playing, for negligence. (*Id.* at p. 130.) The court found that this was a "secondary assumption of the risk case where Fuji owed a duty of care to Morgan in the design and maintenance of its golf course. . . ." (*Id.* at p. 134.) However, the court commented that, "Here, if the relationship between the parties was one of coparticipants . . . this would clearly be a primary assumption of the risk case under *Knight* and the defendant would have no liability towards Morgan because there is an inherent risk that the defendant would hit an errant ball." (*Ibid.*)

When the activity involved is an inherent risk of a sport, a participant owes no duty to coparticipants unless he "intentionally injures another player or engages in reckless conduct that is totally outside the range of the ordinary activity involved in the sport." (*Knight* v. *Jewett, supra,* 3 Cal.4th at p. 318.) We do not believe the failure to yell "fore" is that reckless or intentional conduct contemplated by the *Knight* court. In *Stimson* v. *Carlson, supra,* 11 Cal.App.4th at page 1206, the captain's failure to yell out a course change was within the "range of ordinary activity involved in the sport. . . ." We found that the captain's failure to warn did "not amount to intentional or reckless conduct. . . ." (*Ibid.*) Because the captain customarily shouted out course changes, his failure to do so on that occasion was negligent, but remained within the range of ordinary activity involved in sailing. (*Id.* at pp. 1203, 1206.) The captain did not breach a legal duty owed to plaintiff as contemplated by the primary assumption of risk doctrine. (*Id.* at p. 1206.) Similarly, in the case at bench, respondent's failure to warn appellant of his errant shot, while possibly negligent, did not breach a legal duty to appellant. Whether or not the golfer yells "fore" does not alter the inherent risk of the sport—being struck by a golf ball.

The grant of summary judgment is affirmed.

Poché, J., and Hanlon, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 30, 1997.