I respectfully dissent. The order granting a new trial should be reversed, and the grant of summary judgment reinstated, because this is a classic case of primary assumption of the risk, not secondary assumption of the risk.
 "The existence of `"`[d]uty' is not an immutable fact of nature `"but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection."'"' [Citation.]" (Avila v. Citrus CommunityCollege Dist. (2006) 38 Cal.4th 148, 160-161
[41 Cal.Rptr.3d 299, 131 P.3d 383] (Avila).) "Primary assumption of the risk arises when, as a matter of law and policy, a defendant owes no duty to protect a plaintiff from particular harms. [Citation.] Applied in the sporting context, it precludes liability for injuries arising from those risks deemed inherent in a sport; as a matter of law, others have no legal duty to eliminate those risks or otherwise protect a sports participant from them. [Citation.] Under this duty approach, a court need not ask what risks a particular plaintiff subjectively knew of and chose to encounter, but instead must evaluate the fundamental nature of the sport and the defendant's role in or relationship to that sport in order to determine whether the defendant owes a duty to protect a plaintiff from the particular risk of harm." (Id. at p. 161, fn omitted.) Primary assumption of the risk is a complete bar to the plaintiff's recovery. (Knight v.Jewett (1992) 3 Cal.4th 296, 314-315
[11 Cal.Rptr.2d 2, *Page 745 834 P.2d 696] (Knight).) On the other hand, secondary assumption of the risk, implicating principles of comparative fault, applies "[i]f it is determined that the actions of a defendant did increase the risk of harm above that inherent in the sport." (Sanchez v. Hillerich BradsbyCo. (2002) 104 Cal.App.4th 703, 711-712
[128 Cal.Rptr.2d 529].)
 The reviewing court independently reviews an order granting a new trial after a grant of summary judgment, scrutinizing de novo the trial court's determination that it made an error of law in granting summary judgment. (Aguilarv. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 859-860
[107 Cal.Rptr.2d 841, 24 P.3d 493].) I believe that the trial court's determination in granting a new trial went astray, and the order granting a new trial was not based on correct legal principles.
 The limited duty of care set forth inKnight as to active sports such as touch football has been applied to the game of golf. (Dilger v. Moyles
(1997) 54 Cal.App.4th 1452, 1454 [63 Cal.Rptr.2d 591] (Dilger).) Dilger held that the failure of a golfer to comply with "golf etiquette" by warning another golfer that his shot may endanger the other does not constitute a breach of any duty of care. (Id. at p. 1455.) The court there relied on the principles set forth in Knight, supra, 3 Cal.4th at Page 318, to state that "[w]hen the activity involved is an inherent risk of a sport, a participant owes no duty to coparticipants unless he `intentionally injures another player or engages in reckless conduct that is totally outside the range of the ordinary activity involved in the sport.' [Citation.] We do not believe the failure to yell `fore' is that reckless or intentional conduct contemplated by theKnight court." (Dilger, supra, at p. 1456.) The Dilger court therefore held that primary assumption of the risk barred one golfer's suit against another golfer after the former was hit by a ball shot from the next fairway, even if the defendant was negligent in failing to warn the plaintiff. (Ibid.)
 Dilger also relied on Morgan v. FujiCountry USA, Inc. (1995) 34 Cal.App.4th 127
[40 Cal.Rptr.2d 249] (Morgan), which distinguished the relationship between a golf course and a golfer, on the one hand, and the relationship between golfers, on the other. Relying on Knight, the Morgan court held that while a golf course owes a duty of care to a golfer to provide a reasonably safe golf course, giving rise to secondary assumption of the risk, the principle of primary assumption of the risk bars recovery as between golfers. (Id. at p. 134.) "As between golfers, the duty is to play within the bounds of the game; to not intentionally injure another player or to engage in conduct `that is so reckless as to be totally outside the range of the ordinary activity involved in' golf. [Citation.]" (Morgan, at p. 134.)
 While Dilger involved a golf ball shot from a neighboring fairway, and this case involves a ball striking a coparticipant on the same fairway, no different *Page 746 result is required. The evidence indicated that appellant's conduct resulting in injury to Johnny Shin was, at most, careless or negligent. It was neither intentional nor "so reckless as to be totally outside the range of the ordinary activity involved in" golf. (Knight, supra,3 Cal.4th at p. 320.) Rather, respondent Shin chose to stop in close proximity to his coparticipant to take out his water bottle and check his phone for messages at the very time his coparticipant was walking toward the tee box and preparing to tee off. Shin's duty was, in the words of W.C. Fields, to "[s]tand clear and keep [his] eye on the ball."[1] Being hit by a ball is an inherent risk of golf; "[t]hat shots go awry is a risk that all golfers, even the professionals, assume when they play." (Dilger, supra, 54 Cal.App.4th at p. 1455.) Having placed himself in harm's way at the time appellant was preparing to swing, Shin is in no position to complain that appellant increased the inherent risk of the game by failing to shout "fore" or to confirm Shin's location.
 The cases on which the majority relies[2] are not persuasive in the circumstances presented here. Rather,Dilger and Morgan, which in turn are based upon the Supreme Court's formulation in Knight, are controlling. If a golfer owes no duty of care to someone on another fairway, he owes no duty of care to a member of his own foursome when he tees off. While "an athlete does not assume the risk of a coparticipant's intentional or reckless conduct `totally outside the range of the ordinary activity involved in the sport'" (Avila, supra, 38 Cal.4th at p. 165), the evidence indicates, at most, that appellant was careless or negligent rather than reckless, and appellant did nothing outside the range of the ordinary activity involved in golf that enhanced the inherent risk of the sport. The doctrine of secondary assumption of the risk therefore is inapplicable in this case.
 In the absence of any duty of care owed by appellant to Shin, the trial court's initial order granting the motion for summary judgment was proper, and the order granting a new trial should be reversed. I would add that this case illustrates the point made by Justice Mosk in his concurring and dissenting opinion in Knight, supra,3 Cal.4th 296, where he stated, "Were *Page 747 we to eliminate the doctrine of assumption of risk, we would put an end to the doctrinal confusion that now surrounds apportionment of fault in such cases." (Id.
at p. 322.)
[1] The Golf Specialist (RKO 1930).
[2] These cases include Yancey v. SuperiorCourt (1994) 28 Cal.App.4th 558 [33 Cal.Rptr.2d 777] (plaintiff who was hit by discus, after defendant failed to ascertain that target area was clear, was owed duty of care by defendant; court commented that "[d]iscus bears some similarity to golf. . . . [I]t is common knowledge that golfers check their intended target area and make sure it is clear before hitting a shot" (id. at p. 566)); see Schick v.Ferolito (2000) 327 N.J. Super. 530 [744 A.2d 219] (golfer hit unannounced and unexpected shot from tee after all four players had teed off; golfer had duty to check whether anyone was in line of fire and to provide warning because shot was not inherent part of game); and Allen v. Pinewood Country Club,Inc. (La.App. 1974) 292 So.2d 786 (finding defendant negligent based on principle that golfer must shout "fore"). *Page 748