Filed 4/27/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WALTER WELLSFRY et al., <br><br>     Plaintiffs and Appellants, <br> v. <br> OCEAN COLONY PARTNERS, LLC, <br><br>     Defendant and Respondent. | A165175 <br><br> (San Mateo County <br> Super. Ct. No. 19CIV02280) |

Walter Wellsfry ("Wellsfry") alleges he injured himself when he stepped on a small tree root camouflaged in a grassy walking area he traversed while golfing at a course owned by Ocean Colony Partners, LLC, dba Half Moon Bay Golf Links ("OCP").

Wellsfry and his spouse Leslie Bates-Wellsfry (collectively, "plaintiffs") sued OCP for negligence and loss of consortium premised upon OCP's alleged breach of its duty of care to Wellsfry by its failure to either remove or warn of the tree root. The trial court found the lawsuit barred by the primary assumption of risk doctrine and granted summary judgment. In so doing, the court found that playing outdoor golf included the inherent risk of injury caused by stepping on a tree root in an area used to access tee boxes. The court further found that OCP had not increased the inherent risk of injury and had not failed to take reasonable steps to minimize the inherent risk of injury that would not have altered the fundamental nature of the sport.

We affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND[1]

*The Incident*

On July 28, 2018, Wellsfry was playing golf on a golf course located near the coastal bluffs in Half Moon Bay, which OCP owns, maintains, and manages. Wellsfry was playing on the "Old Course," which exemplified "the traditional American Parklands–style course, with the fairways flanked by several species of evergreen trees."

At approximately 3:30 p.m. to 3:45 p.m., Wellsfry parked his golf cart near a water station. He did not notice any trees or tree roots in the area. He walked from his cart to the tee box for the 14th hole, took a shot, and then walked down a "gentle slope" on the opposite side of the water station back toward his golf cart. He described the area as "a combination of dirt and sand," or "a combination of grasses and . . . a sandy surface." Suddenly, he felt "searing pain" and fell into his golf cart. Wellsfry knew he had stepped[2] on something but did not see what it was and could not say if his foot caught or twisted on anything. Another golfer pointed out a tree root, but Wellsfry did not recall if the other golfer said she had seen Wellsfry step on that root. Believing he may have just sprained his ankle, Wellsfry continued playing golf and later that day reported the incident to OCP's general manager.

---

[1] The factual recitation is taken from the parties' pleadings, separate statements of undisputed facts, and supporting evidence submitted on OCP's motion for summary judgment. We set forth only those facts necessary to resolve this appeal.

[2] The parties dispute whether Wellsfry "stepped" or "tripped" on a tree root. As the resolution of this appeal does not turn on whether Wellsfry tripped or stepped, we use the term step or stepped for convenience and we deny as moot plaintiffs' request for judicial notice of certain dictionary definitions of the word "trip." (See *Miller v. Zurich American Ins. Co.* (2019) 41 Cal.App.5th 247, 255, fn. 5 [request for judicial notice denied as moot as documents were not necessary to resolve appellate issues].)

2

Wellsfry described the tree root as approximately 1.5 inches high by 1.5 inches wide or "it may have been a little smaller;" "the color of the root and the sand and the grass . . . just blended right in." He estimated the nearest tree was approximately 60 to 100 feet away. Wellsfry knew trees were very common on golf courses. However, he did not notice any tree roots as he walked from his golf cart to the tee box and did not expect to see any; he played "a lot of golf" and had "never seen roots like that, close to a tee box and a water fountain, ever."

*The Complaint*

On April 18, 2019, plaintiffs filed a complaint for negligence and loss of consortium based on the injuries sustained by Wellsfry on the golf course. It alleged that Wellsfry had fallen "by tripping on a root that was concealed in the grass in reasonably close proximity to where a tree had been removed but the root had remained on the surface creating a hazard although in an otherwise grassy area of the golf course," and "the presence of a root as a hidden obstruction created a condition that was negligently maintained and dangerous with an unreasonable risk of harm to anyone that entered that area." It further alleged that OCP knew or should have known of the reasonably foreseeable danger posed by the condition of the golf course and had sufficient time to take measures to protect against the dangerous condition. OCP filed an answer denying liability and asserting several affirmative defenses, including the primary assumption of risk doctrine.

*The Motion for Summary Judgment*

OCP sought summary judgment based on the primary assumption of risk doctrine. In support of its motion, OCP offered portions of depositions taken of Wellsfry and the following individuals: professional arborist Dennis Yniguez; OCP Director of Golf Course Maintenance and Superintendent

3

Daniel Miller; and OCP General Manager William Troyanoski. OCP also requested judicial notice of the United States Golf Association's published rules of golf for 2019 as updated in June 2018, and certain documents taken from the internet explaining the nature of the sport of golf including its inherent risks. Plaintiffs opposed the request for judicial notice.

Professional arborist Dennis Yniguez stated that an outdoor park-style golf course with trees and plants normally included roots at the ground surface. Such roots were not generally removed as part of tree or stump removal because the retention of the roots in situs reduced erosion and stabilized the area where the roots were located for many years. Yniguez further explained the actual process of root removal; that the process would be time consuming and expensive as a parkland-style golf course generally consisted of tens of thousands of square yards; and that there were negative impacts on the golf course surface and to persons in the area both during and after the root removal process.

OCP Director of Maintenance and Superintendent Daniel Miller explained OCP's procedures concerning the maintenance of the golf course, including the area golfers used to traverse to and from the tee box for the 14th hole. He routinely inspected the area and knew about tree roots in that area, but he did not believe any of them posed a hazard. OCP maintenance staff also inspected the area daily and cut the grass weekly. During the year before Wellsfry's complaint, approximately 30,000 golfers had traversed the golf course and Miller had not received any complaint or report of injuries caused by the ground surface in the area where Wellsfry was injured.

Miller also reviewed why no reasonable steps could be taken to eliminate the inherent risks associated with the topographical features of the golf course without altering the fundamental nature of the sport. He

4

explained that the "[i]mposition of a duty to remove or provide warnings regarding the presence at the ground surface of roots, including roots measuring approximately 1.5 inches by 1.5 inches, would change the nature of golf courses and the experience of golfing by requiring far more extensive manicuring of the golf courses. Part of the inherent and generally pleasing element of nature would be removed from golf. Every potential walking area of the course would have to be free of bumps and projections: this would likely be an area of tens of thousands of square yards. That would significantly change the interaction between golf players and nature, and the interface between the golfer and the ground. The surface of the ground is the golfer's foundation when engaging in the sport of golf, and that would necessarily be changed if there [were] a duty to eliminate roots, including roots measuring approximately 1.5 inches by 1.5 inches."

Miller opined that an enormous burden would be placed on owners of golf courses if they were obligated to locate and remove tree roots, specifically roots measuring 1.5 inches by 1.5 inches and smaller. Roots are generally underground where it is difficult to see them. Experience shows that roots can come to and project above the surface of the ground, whether by ordinary wear and tear, growth of subsurface vegetation, weather events, people compressing or kicking at the ground, divots, etc., so as to displace and/or compact the earth that had been concealing the object thereby resulting in projecting above the ground such that it could be stepped upon. Imposition of a duty to remove or warn of conditions on or just below the surface of the ground which could potentially hurt a person's foot . . . would also result in significant adverse consequences to the community: costs of locating and removing such conditions would be considerable – especially to the extent the duty required subsurface examination to locate objects close to the surface

5

that . . . might become exposed – and [the costs] would be passed along to the golfers."

In opposition to the motion for summary judgment, plaintiffs argued that the danger of tree roots that are outside the playing area and not easily seen is not a risk of playing golf. Plaintiffs also argued that OCP could have taken reasonable steps (removal or warning of tree roots in the relevant area) to minimize the risk of injury, which steps would not have altered the fundamental nature of the sport. In support, they filed portions of the deposition testimony of Wellsfry and Miller and a declaration of George Kelley, proffered as an expert knowledgeable in the sport of golf and the management and maintenance of golf courses.

Plaintiffs highlighted, among other things, the following portions of Miller's deposition testimony: he agreed hazards should be marked with traffic cones or small flags; he had directed that roots not be left in place after the removal of a tree and its stump; he had seen some tree roots in the relevant area before Wellsfry's complaint; and he had gone to the area and arranged for the removal of several tree roots after Wellsfry's complaint. According to plaintiffs, Miller's deposition testimony that tree roots were removed " 'if we [feel] there's an issue,' " or " 'in some cases if we feel there is a possibility of a trip hazard,' " contradicted his later submitted declaration that he had not seen any trees roots in the relevant area that he thought represented a hazard.

Kelley opined that "[t]ripping on a tree root that is not easily seen where there are no trees outside the playing area is not a risk of playing golf." He further opined that golf course owners had a duty to provide a reasonable and safe environment for golfers; that if there were conditions that created a potentially hazardous condition not easily seen in an area golfers were likely

6

to walk it was the responsibility of the golf course owner to provide warnings of the hazard; and it was below reasonable golf course maintenance standards not to mark any area that created a potential safety hazard.

Kelley's declaration attached three photographs that had been represented to him as showing the relevant area and a close-up "photograph of the tree root that caused the fall."[3]  Kelley discussed his evaluation of the photographs of the area and the close-up tree root, stating only that the depicted area was not in the golf playing area or in any of the designated components of the golf course, but was an area where golfers were expected to traverse to and from the tee box for the 14th hole, and there were no trees in near where the fall occurred.

*Ruling on the Motion for Summary Judgment*

The trial court granted OCP's motion for summary judgment, finding that the primary assumption of risk doctrine barred this lawsuit as OCP owed no duty of care to Wellsfry to prevent his injury caused by "stepping on a tree root in the area" used by golfers to traverse to and from the tee box for the 14th hole.

In support of its ruling, the court explained that it was undisputed that Wellsfry was playing golf at the time of his injury.  Even if the area in which

---

[3]    The trial court did not rule on OCP's written evidentiary objections to the admission of the photographs.  Consequently, the court was "required by [Code of Civil Procedure] section 437c, subdivision (c), to consider [the photographs].  Similarly, 'on appeal after a motion for summary judgment is granted, we review the record de novo, considering all of the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.' " (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534.)  In its responsive brief, OCP does not renew its evidentiary objections to the photographs.  Accordingly, we deem the photographs to be part of the record on appeal.

he was injured did not technically fall within the " 'playing area' " of the golf course, OCP was entitled to rely on the primary assumption of risk doctrine because a fundamental part of the sport of golf included the inherent risks assumed by a golfer navigating the course, "including its terrain and natural obstacles, such as slopes, mounds, trees, leaves, water, sand, pavement, and tree roots," and that "[e]ven with the use of a golf cart, the act of playing golf requires walking sometimes lengthy distances to reach the tee box and the location where the ball has landed after being struck. In walking those locations, golfers must deal with and overcome the terrain, including natural obstacles like tree roots. Indeed, dealing with fatigue caused by navigating the terrain and obstacles of a golf course is a fundamental part of the sport. This includes navigating the area where Wellsfry was injured – which, as [p]laintiffs concede, golfers must regularly traverse to get to and from the tee box for the 14th hole."

The court further found that "[b]ecause stepping on a tree root in the area where Wellsfry was injured is a risk inherent to the sport of golf," OCP could not be held liable for negligence because it had not increased the risks to Wellsfry beyond that risk of injury inherent to playing golf and OCP had not failed to take " 'reasonable steps' " to minimize that inherent risk of injury. The court explained: "Indeed, [p]laintiffs present[ed] no evidence that [OCP, which] knew about the existence of tree roots in the area, knew or should have known that the camouflaged root stepped on by Wellsfry was hazardous *before* Wellsfry was injured. By contrast, [OCP] presented evidence that it had received no reports of any injuries or hazardous conditions in the area before Wellsfry was injured even though tens of thousands of golfers had played on the golf course . . . and regularly 'traversed' the area where Wellsfry was injured . . . . [OCP] also presented

evidence that it regularly inspected the area and had not identified any hazardous conditions before Wellsfry was injured . . . . Based on these undisputed facts, [OCP] had no reason to suspect that the tree root that Wellsfry stepped on presented any sort of hazard *before Wellsfry was injured.*"  (Italics in original.)

The court granted OCP's request for judicial notice of the information regarding golfing "solely for the purpose of determining the legal issue of inherent risk," and it overruled plaintiffs' evidentiary objections to OCP's evidence.  It did not rule on OCP's objections to plaintiffs' evidence.

Following the issuance of its summary judgment order, the court entered a judgment of dismissal in favor of OCP.  This appeal ensued.

## DISCUSSION

## I.  Standard of Review

In reviewing the propriety of a grant of summary judgment, our review is de novo.  "[W]e conduct the same procedure employed by the trial court. We examine (1) the pleadings to determine the elements of the claim, (2) the motion to determine if it establishes facts justifying judgment in the moving party's favor, and (3) the opposition — assuming movant has met its initial burden — to 'decide whether the opposing party has demonstrated the existence of a triable, material fact issue.  [Citation.]'  [Citations.]  We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale." (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 630.)[4]

---

[4]      Consequently, we do not separately address plaintiffs' arguments that challenge some of the trial court's statements in its written order.

The applicability of the primary assumption of risk doctrine may be resolved on summary judgment where the record does not reflect triable issues of material facts. (*Shin v. Ahn* (2007) 42 Cal.4th 482, 500 (*Shin*).) Judges applying the primary assumption of risk doctrine in cases regarding a recreational context may consider their own "common experience with the recreational activity involved" and "may also consult case law, other published materials, and documentary evidence introduced by the parties on a motion for summary judgment." (*Nalwa v. Cedar Fair, L.P.* (2012) 55 Cal.4th 1148, 1158.) Expert opinions may also be considered " 'for purposes of weighing whether the inherent risks of the activity were increased by the defendant's conduct.' " (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1017–1018, citing to *Huffman v. City of Poway* (2000) 84 Cal.App.4th 975, 995, fn. 23; *American Golf Corp. v. Superior Court* (2000) 79 Cal.App.4th 30, 37 (*American Golf*); *Staten v. Superior Court* (1996) 45 Cal.App.4th 1628, 1635-1637 (*Staten*).)

## II. Primary Assumption of Risk Doctrine as Applied to Owners and Operators of Sporting Venues

"Generally, everyone has a duty of care not to cause an unreasonable risk of harm or injury to others. (Civ. Code, § 1714, subd. (a).)" (*Mayes v. La Sierra University* (2022) 73 Cal.App.5th 686, 697 (*Mayes*).) Hence, " 'for example, a property owner ordinarily is required to use due care to eliminate dangerous conditions on . . . [the] property.' " (*American Golf, supra*, 79 Cal.App.4th at p. 36, quoting *Knight v. Jewett* (1992) 3 Cal.4th 296, 315 (*Knight*).)

" 'In the sports setting, however, conditions or conduct that otherwise might be viewed as dangerous often are an integral part of the sport itself.' " (*American Golf, supra*, 79 Cal.App.4th at p. 36, quoting *Knight, supra*, 3 Cal.

10

4th at p. 315.) "Under the assumption of the risk doctrine, ordinarily a recreation provider owes no duty to a participant in an active sport to use due care to eliminate risks inherent in the sport." (*American Golf, supra*, 79 Cal.App.4th at p. 36.) Since its reformulation in *Knight, supra,* 3 Cal.4th at p. 296, "California's assumption of risk doctrine has taken two quite different forms. Primary assumption of risk is a complete bar to recovery. It applies when, as a matter of law, the defendant owed no duty to guard against a particular risk of harm. Secondary assumption of the risk applies when the defendant owes a duty, but the plaintiff has knowingly encountered a risk of injury caused by the defendant's breach. Liability in [the latter] cases is adjudicated under the rules of comparative negligence." (<u>Gregory</u> *v. Cott* (2014) 59 Cal.4th 996, 1001; see *Shin, supra*, 42 Cal.4th at p. 492 [the secondary assumption of risk doctrine relates to the allocation of damages, not to the question of duty].)

"[P]articipation in an active sport is governed by primary assumption of risk, and a defendant owes no duty of care to protect a plaintiff against risks inherent in the sport." (*Staten, supra*, 45 Cal.App.4th at p. 1632.) "When the risks are inherent, the defendant does not have a 'duty to protect the plaintiff from those risks [citation] or take steps to reduce those risks.' " (*Fazio v. Fairbanks Ranch Country Club* (2015) 233 Cal.App.4th 1053, 1058 (*Fazio*); see *American Golf, supra*, 79 Cal.App.4th at p. 37 ["[t]he standards in the industry define the nature of the sport"].) Nonetheless, the courts have held that "[i]n any case in which the primary assumption of risk doctrine applies," the owners and operators of sports venues owe participants "a duty 'not to act so as to *increase* the risk of injury over that inherent in the activity.' [Citation.] [And,] owners and operators of sports venues . . . have an *additional* duty to undertake reasonable steps or measures to protect their

11

customers' . . . safety – if they can do so without altering the nature of the sport . . . ." (*Mayes, supra,* 73 Cal.App.5th at p. 698; italics in original.)

## III. Primary Assumption of Risk Doctrine Includes the Inherent Risks of Playing Golf on an Outdoor Course

Our Supreme Court has held that the primary assumption of risk doctrine applies to golf played on an outdoor course. (See *Shin, supra,* 42 Cal.4th at p. 485 ["[w]e hold that the primary assumption of risk doctrine does apply to golf and that being struck by a carelessly hit ball is an inherent risk of the sport"].) The open question is whether the inherent risk of playing golf on an outdoor course includes risks associated with the topographical features of the course. We find it does.

Golf is a sport whose object is for players to use special clubs to hit a small ball over lengthy distances and ultimately into a hole in the ground surface. When golf is played outdoors, it is common knowledge that the game does not use a "standardized playing area," but rather takes place on the varied natural terrain of the ground surface of the course. Because each golf course is unique, golfers can reasonably expect to encounter myriad variations in the ground surface and obstacles as they traverse a golf course. (See *American Golf, supra,* 79 Cal.App.4th at p. 34 ["[g]olf courses are designed with both fixed and removable obstacles, to make play interesting and challenging;" "[f]ixed obstacles include trees, lakes, ponds, benches, bridges, sand bunkers, sand traps, and rocks"].) As explained by OCP's Director of Maintenance and Superintendent Daniel Miller, "[t]he type of grass used, such as Bermuda, Bentgrass, Zoysia, Poa Annua, or Ryegrass, the presence or absence of trees, bushes, roots, holes, protuberances, furrows, gouges, rocks, acorns, seeds, and other conditions of the terrain, can and regularly do affect the golfer's experience, both in terms of how the ball

12

interacts with the terrain and in the color, density, and the overall appearance of the terrain and the feel and atmosphere of the course." Hence, the ground surface of a golf course "establishes a significant portion of the challenge and atmosphere of golf and constitutes the interface between the golfer . . . and nature that is part of the gestalt of golf."

We therefore conclude one who plays golf on an outdoor course assumes those risks associated with the topographical features of the course. (See *Hahn v. Town of West Haverstraw* (2d Cir. 2014) 563 Fed. Appx. 75, 77 [primary assumption of risk doctrine barred lawsuit where plaintiff golfer was injured due to golf cart wheel striking a stone on a golf cart path]; *Simon v. Hamlet Windwatch Development, LLC* (N.Y.A.D. 2014) 120 A.D.3d 657, 657–658 [primary assumption of risk doctrine barred lawsuit where plaintiff golfer stepped into the area of the cart path containing a depressed drainage grate and, as a result, fell onto a wooden step and injured himself]; *Brust v. Town of Caroga* (N.Y.A.D. 2001) 287 A.D.2d 923, 925 (*Brust*) [primary assumption of risk doctrine barred lawsuit where plaintiff golfer was injured when she stopped her golf cart on a path perpendicular to the crest of a small hill in front of the green and as she began to walk towards her golf ball the cart rolled down the slope of the fairway, ultimately striking her and causing her injury]; *Egeth v. County of Westchester* (N.Y.A.D. 1994) 206 A.D.2d 502, 502 (*Egeth*) [primary assumption of risk doctrine barred lawsuit where plaintiff golfer was injured while walking over a low mound of earth that separated the seventh green from the golf cart path as plaintiff was aware of the golf course's topographical features, "the terrain around the green was

13

inherent to the nature of the golf course," and "under the circumstances, the plaintiff was not unnecessarily or unreasonably exposed to danger"].)[5]

## IV. The Primary Assumption of Risk Doctrine Bars This Lawsuit

The primary assumption of risk doctrine bars this lawsuit for the reasons stated by the trial court: the inherent risks of playing golf on OCP's outdoor course included the risks associated with the topographical features of the course – in this case stepping on a small inconspicuous tree root in the grassy area used by golfers to access the tee box for the 14th hole; OCP did not increase the risk of injury beyond the inherent risks associated with the sport; and OCP did not fail to take reasonable steps to minimize the inherent risks that would not have altered the fundamental nature of the sport.

Plaintiffs allege Wellsfry was injured when he stepped on the remnant of a removed tree – specifically, a small tree root (approximately 1.5 inches high and 1.5 inches wide) left in the ground surface of the area used by golfers to traverse to and from the tee box for the 14th hole. Photographs of the area taken from a distance show the ground surface was not smooth but rather was a grassy expanse with areas of dirt and sand. Similarly, the close-up photograph of a tree root shows a root nestled in a grassy area with the height of the tree root either just below or approximately the same height as the grassy area surrounding it.

Because Wellsfry was aware of the obviously uneven grassy expanse, he "must be held to a common appreciation of the fact" that there was a risk of injury as he walked over this ground surface. (*Brust, supra*, 287 A.D.2d at

---

[5] We see no merit to plaintiffs' argument that reliance on *Egeth*, *supra*, 206 A.D.2d 502, also cited by the trial court, is misplaced. We cite *Egeth* and the other non-California authority to support our decision that the inherent risks of playing golf on an outdoor course include risks associated with the topographical features of the golf course.

14

p. 925.) By walking over this ground surface, Wellsfry assumed the obvious risk that he might step on a small inconspicuous object because he could not see what was hidden in the ground surface, whether the object was a tree root or some other small object such as a rock, stone, acorn, etc. This risk itself is inherent in playing golf on an outdoor course; it is not a hidden risk, a unique risk, or an increase in the risk inherent in the sport. (See, e.g., *Danieley v. Goldmine Ski Associates, Inc*. (1990) 218 Cal.App.3d 111, 123 [" '[e]ach person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary;' " " '[t]hose dangers include, but are not limited to, injuries that can result from *variations in terrain*; surface or *subsurface* snow or ice *conditions*; bare spots; rocks, trees and other forms of natural growth or debris . . .' "; italics added].)

In asserting that an inherent risk of playing golf on OCP's golf course did not include the risk of stepping on a tree root, plaintiffs ask us to consider that Wellsfry had not "voluntarily" undertaken the risk of encountering tree roots in the area used by golfers to access the tee box for the 14th hole. According to plaintiffs, the tree root was not in a "natural" condition but was the remnant of a tree that had been removed manually by OCP (i.e. man-made condition); the surrounding grass, dirt, and sand camouflaged the tree root; there was no warning of the presence of tree roots – either as a natural warning (e.g. attached to a tree) or a manufactured one (e.g. signage, flag, or chalk); there was no reason for golfers to suspect any danger given the location of the incident; and a golfer traversing the treeless area would have no reason to think that "tripping hazards lay underneath." Plaintiffs also contend they "are not arguing that a golf course [owner] needs to warn golfers about *every* tree root on a course. The only type of tree root that is relevant here is the one that Wellsfry tripped on: an inconspicuous tree root remaining

15

from a manually uprooted tree in an area without any immediately surrounding trees." (Italics in original.) We find these arguments unavailing.

Our Supreme Court in *Knight*, *supra*, 3 Cal.4th 296, made clear that a particular plaintiff's subjective knowledge, awareness, or expectations as to the "*existence* and *magnitude* of the risks the plaintiff voluntarily chose to encounter" is not a relevant inquiry when applying the assumption of risk doctrine. (*Id.* at p. 313, italics in original.) "[T]he question of the existence and scope of a defendant's duty of care is a *legal* question which depends on the nature of the sport or activity in question and on the parties' general relationship to the activity, and is an issue to be decided by the court, rather than the jury." (*Id.* at p. 313, italics in original.) The focus is solely on "whether, in light of the nature of the sporting activity," it can be said that "defendant's conduct breached a legal duty of care to plaintiff." (*Id.* at p. 315.) "As used in the context of primary assumption of risk," an obvious risk "is one within the contemplation of the activity, whether or not it is actually observed" by the injured plaintiff. (*Beninati v. Black Rock City, LLC* (2009) 175 Cal.App.4th 650, 660.) Here, there is no question that Wellsfry was aware he was not traversing a smooth ground surface, but rather a grassy expanse that included dirt and sand and one that might well have small inconspicuous objects hidden in the grassy expanse.

Plaintiffs also argue that summary judgment should have been denied because OCP failed to meet its initial burden of showing that (1) its maintenance of the golf course had not increased the risk of injury beyond that inherent in the risk of playing golf, and (2) it had not failed to take reasonable steps to minimize the risk of injury that would not have altered the fundamental nature of the sport. We disagree. OCP's separate

16

statement of facts and supporting evidence (which included declarations of an expert arborist and OCP's maintenance director) are sufficient to meet its initial burden on summary judgment. The declarations of OCP's maintenance director and superintendent and an expert arborist, described in detail ante, constitute prima facie evidence showing that OCP's failure to remove or warn of the presence of small inconspicuous tree roots in the grassy expanse used by golfers to access the tee box for the 14th hole had not *increased* the inherent risks associated with the topographical features of the golf course and that it had not failed to take reasonable steps to minimize the inherent risks associated with the topographical features of the course that would not have altered the fundamental nature of the sport.

In contrast, we find plaintiffs' proffered evidence does not raise triable issues of fact as to whether OCP increased the inherent risk of harm by "uprooting a tree and leaving protruding roots without providing any warning to golfers traversing the area," and whether OCP could have taken reasonable steps to minimize the inherent risk of harm that would not alter the fundamental nature of the sport by either removing the roots (as it did after the incident) or posting a warning of the presence of the roots.

Plaintiffs' expert Kelley opined in broad, general terms about the responsibility of golf course owners to provide a reasonable and safe playing environment, but completely failed to explain why or how the tree root represented as the one that caused Wellsfry's injury or any of the tree roots left in situs constituted a dangerous condition or tripping hazard that required either removal or a warning to golfers.[6] Hence, Kelley's opinion "is

---

[6] While not dispositive, we note that it is impossible to make a finding of a dangerous condition or tripping hazard based on the photographs of the relevant area as they either show a grassy expanse including areas of dirt and sand or a close-up of a tree root nestled in a grassy area.

17

not sufficient to create a duty on the part of [OCP] where none exists. . . . It will always be possible for a plaintiff who suffers a sport injury to obtain expert testimony that the injury would not have occurred if the recreation provider had done something differently. Such expert testimony is not sufficient to establish that the recreation provider increased the inherent risks of the sport. Such expert opinion does not create a triable issue of fact on a motion for summary judgment based on the primary assumption of the risk defense." (*American Golf*, *supra*, 79 Cal.App.4th at p. 39.)

OCP's Director of Maintenance and Superintendent Miller's testimony also does not raise a triable issue of material fact as to whether OCP increased the risks inherent in the sport by creating a dangerous condition or tripping hazard in the area where Wellsfry was injured. Miller made it quite clear that – before Wellsfry's complaint – Miller had routinely inspected the relevant area almost daily and did not find any tree roots that posed a tripping hazard. After the complaint, Miller examined the relevant area and again failed to find any tree roots that posed a tripping hazard. Indeed, Miller could not even locate the tree root that had prompted Wellsfry's complaint. In an abundance of caution, Miller decided to remove three tree roots, taking his "best guess" as to the root that might have possibly been the one that Wellsfry stepped on. The fact that Miller chose to remove these tree roots is not evidence of a dangerous condition or tripping hazard at the time of Wellsfry's injury. As the trial court correctly ruled, "evidence of remedial measures taken" after Wellsfry's injury " 'is inadmissible to prove negligence or culpable conduct in connection with the event.' (Evid. Code, § 1151.)" " 'Whether a given set of facts and circumstances creates a dangerous condition is usually a question of fact. [Citation.] The issue of a dangerous condition becomes a question of law only where reasonable minds can come to

only one conclusion.' " (*Fazio*, *supra*, 223 Cal.App.4th at p. 1064.)  On this record, we see no evidence from which a reasonable trier of fact could find that the grassy area used by golfers to access the tee box for the 14th hole "posed a substantial risk of injury to the foreseeable user exercising due care." (*Ibid.*)

Plaintiffs' reliance on *Morgan v. Fuji Country USA, Inc.* (1995) 34 Cal.App.4th 127 (*Morgan*) is misplaced.  In *Morgan*, the court found that the primary assumption of risk doctrine did not apply to bar a lawsuit by an injured golfer who was struck by an errant golf ball.  (*Id.* at p. 130.)  The court explained that, even though an inherent risk of playing golf was the risk of being struck by a golf ball, the defendant golf course owner owed a duty of care to golfers to minimize that inherent risk by designing and maintaining its course if it could do so without altering the nature of the game.  (*Id.* at pp. 134–135.)  In finding there was a triable issue of fact, the court emphasized evidence indicating the relevant area was "particularly dangerous" due to the defendant's removal of trees.  (*Id.* at pp. 134–135.)  Here, plaintiffs point to no evidence in the record from which a reasonable trier of fact could find that the ground surface of the golf course used by golfers to access the tee box for the 14th hole was "particularly dangerous" (*id.* at p. 135) or posed a substantial risk of injury to golfers exercising reasonable care.  Indeed, the absence of complaints or reports of injuries shows that "this was not an area of great danger" or a place where OCP could reasonably expect that golfers would be at risk for injuries as they traversed the grassy expanse to access the tee box for the 14th hole.  (*American Golf*, *supra*, 79 Cal.App.4th at p. 39.)

Nor are we persuaded by plaintiffs' reliance on *Fazio*, *supra*, 233 Cal.App.4th 1053, and *Luna v. Vela* (2008) 169 Cal.App.4th 102 (*Luna*).  In

*Fazio*, the plaintiff was injured when he fell from a stage constructed by the defendant. (*Fazio, supra*, 233 Cal.App.4th at p. 1060.) The court held that the primary assumption of risk doctrine did not apply because a reasonable trier of fact could conclude that the defendant's placement of the stage increased the risk of falling, noting expert testimony that the construction of the stage fell below industry standards. (*Id.* at p. 1063.) In *Luna*, the plaintiff was injured when he tripped over tie lines supporting a volleyball net that was part of a volleyball court the defendant had constructed in his front yard. (*Luna, supra*, 169 Cal.App.4th at p. 105.) The court held that the primary assumption of risk doctrine did not apply because there was evidence from which a reasonable trier of fact could find that the defendant had increased the risk of tripping due to his placement of the tie lines securing the net. (*Id.* at p. 112.) In contrast, again, plaintiffs in the case before us point to no evidence in the record from which a reasonable trier of fact could find that OCP's failure to remove or warn of the presence of small inconspicuous tree roots increased the risk of injury beyond the risk of injury inherent in walking through the grassy expanse used by golfers to access the tee box for the 14th hole.

In sum, OCP met its initial burden of proffering prima facie evidence that the primary assumption of risk doctrine barred this lawsuit and plaintiffs failed to meet their burden of proffering evidence raising triable issues of fact that would preclude summary judgment dismissing this lawsuit. Therefore, we shall affirm.

**DISPOSITION**

The judgment is affirmed. Defendant and respondent Ocean Colony Partners, LLP, is awarded costs on appeal.

20

_____
Petrou, J.

WE CONCUR:


_____
Tucher, P.J.


_____
Rodríguez, J.


A165175/*Wellsfry et al., v. Ocean Colony Partners, LLC.*

Trial Court:      San Mateo County Superior Court

Trial Judge:      Hon. Danny Chou

Counsel:          Decker Law, James Decker, for Plaintiffs and Appellants.

                  Vogle Meredith Burke, Daniel Streza and Guy Stilson for Defendant and Respondent.